Present:  All the Justices


VICKI WATSON BAILEY, ADMINISTRATOR, ETC.
                              OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 972112              September 18, 1998

LANCASTER RURITAN RECREATION
CENTER, INC.

FROM THE CIRCUIT COURT OF LANCASTER COUNTY
Joseph E. Spruill, Jr., Judge

The dispositive question in this negligence action is whether the defendant is protected from liability under the doctrine of charitable immunity.

In June 1996, appellant Vicki Watson Bailey, Administrator of the Estate of April C. Watson, an Infant, Deceased, filed this action for damages under the death by wrongful act statutes against appellee Lancaster Ruritan Recreation Center, Inc.  The defendant, a nonstock corporation with its office and principal place of business in Lancaster County, owns, operates, and supervises a swimming pool on its premises.

The plaintiff alleges that, on June 27, 1994, the decedent, her daughter, was a guest and invitee at defendant's facility for the purpose of swimming in the pool.  The plaintiff further alleges the decedent drowned that day as the result of the negligence of defendant's agents, servants, and employees.

Defendant filed a grounds of defense denying it is indebted to the plaintiff.  It also filed a plea alleging plaintiff's

claim is barred because defendant is a charitable corporation and plaintiff's decedent "was a beneficiary of the bounty of the charitable corporation."

In May 1997, the trial court considered testimonial and documentary evidence during a hearing on the plea. Subsequently, in a letter opinion, the court sustained the plea, holding that defendant is a charitable corporation and that plaintiff's decedent was a beneficiary of its bounty. We awarded plaintiff this appeal from a July 1997 order dismissing the action with prejudice.

On appeal, the plaintiff assigns error to both rulings below. Because of the view we take of the case, only the first issue requires discussion, that is, did the trial court err in sustaining defendant's plea in bar on the ground that defendant is a charitable institution?

Under the doctrine of limited immunity applicable to charities in Virginia, a charitable institution is immune from liability to its beneficiaries for negligence arising from acts of its servants and agents, if due care has been exercised in their selection and retention. Straley v. Urbanna Chamber of Commerce, 243 Va. 32, 35, 413 S.E.2d 47, 49 (1992). Accord Moore v. Warren, 250 Va. 421, 422-23, 463 S.E.2d 459, 459 (1995).

In order to determine if a corporation is a charitable organization, a court must examine the powers and purposes set forth in its charter to learn whether or not the corporation is maintained for gain or profit. Danville Community Hosp. v. Thompson, 186 Va. 746, 753, 43 S.E.2d 882, 884 (1947). The character of the organization may be ascertained not only from such powers and purposes but also from the manner in which it is conducted. Id. If an organization's charter sets forth a charitable purpose, there is a rebuttable presumption it is operating a charitable institution in accordance with such purpose. Memorial Hosp. v. Oakes, 200 Va. 878, 883, 108 S.E.2d 388, 392 (1959).

In the present case, the defendant, which has no "official affiliation with Ruritan International," was established in 1964 as a nonstock corporation. According to the charter, its purpose is to operate "a civic center, club, social or recreation center" and to "provide funds for the carrying on of religious, charitable, scientific, literary, historical or education programs." The charter further provides that no part of the funds shall "inure to the benefit of any trustee, director, or member of said corporation."

From its inception, defendant operated a recreation center consisting of the swimming pool, a baseball diamond, a tennis court, and a concession stand. Testimony showed the center was

organized so that "kids in the upper end of the county would have someplace to go and swim and play ball and whatever." Due to lack of funds over the years to maintain all the facilities, only the pool remained in operation at the time of the accident in question.

According to the bylaws, membership in the recreation center, which includes the privilege to use the pool, is restricted to "those members accepted for membership by action of the Board of Directors." Initially, membership applications were to be accompanied by a $150 initiation fee plus annual dues of $30. An application was accepted only upon a majority vote of the board of directors. Membership entitled the family of the holder of a membership card to use the facilities.

Nonmembers are allowed to use the pool as guests of a member by payment of a guest fee. Nonmembers have been permitted to take swimming lessons given by the American Red Cross at the pool upon payment of a fee. While not pertinent to the issue at hand because the facts relate to the period after the accident in question, the evidence showed that during 1995 and 1996 children sponsored by the Young Men's Christian Association were permitted to use the pool. The YMCA paid a fee of $1 per child.

The membership procedure changed, however, in the "last couple of years" before the hearing on the plea in bar.

4

According to defendant's treasurer, "if anybody applied, we accepted them . . . [a]s soon as we got the money."  At the time of the hearing, the initiation fee was $400 and the annual dues were $200.  The treasurer testified that the "regular use of the facilities" remains "exclusively for the members and guests only," although no person has been denied membership.

The funds generated by use of the pool have been employed to pay nominal salaries of the treasurer and the corporate secretary, to buy chemicals for the pool, to finance repairs, and to pay utility bills.  The treasurer, who has served in that position since 1990 and has been a member since 1966, testified the financial goal of the corporation "was to break even" and to "have enough to keep the pool up."  No compensation has been received by the other corporate officers.  According to the treasurer, no funds have been "devoted or donated" by the corporation to any religious, scientific, literary, or historical endeavor since 1990 because defendant "never had the money."

The corporation is not exempt from local real estate taxes nor is it exempt from federal income taxes.  Federal tax returns dating from 1980 showed a small amount of taxable income was generated in 1991 and 1993 but the tax paid was recouped because of losses reported later.  During the other years, the defendant reported either no taxable income or a loss.

On appeal, the defendant contends the trial court correctly concluded that it is a charitable organization.  Arguing the charter sets forth a charitable purpose, that is, providing recreational facilities for the young people and residents of Lancaster County, defendant notes it is presumed to be operating a charitable organization in accordance with this purpose.

Continuing, defendant refers to several evidentiary factors mentioned in case law on the subject, which, it says, confirm it was operating in accord with its charitable purpose at the time of the accident.  First, defendant says that to advance "its charitable purpose of providing educational programs" it allowed anyone, whether a member or not, to enroll in swimming lessons conducted by the American Red Cross upon payment of a fee. Defendant argues that use of the pool by the YMCA, as well as evidence the Boy Scouts of America has utilized the facilities for camping and meetings, are other examples of defendant advancing its educational and charitable programs.

Second, defendant points to evidence that no corporate officer receives compensation, except the nominal amounts paid the secretary and treasurer.  Third, defendant says none of the meager "profits" has ever been paid to any person or entity, except as compensation for work performed.  "In short, all profits or surplus funds were devoted to the benevolent and charitable purpose of establishing and maintaining a

6

recreational facility for the citizens of Lancaster County,"
according to defendant. Fourth, defendant points to evidence
that it did not aggressively pursue debt collection against
members who failed to pay dues, as another example of its
charitable activity.

Finally, defendant, responding to one of plaintiff's
arguments, contends an organization is not required under
Virginia law to "donate" funds in order to qualify as a charity.
It says many charities, like defendant, provide services or
construct facilities to advance their charitable purpose. "In
fact, typically, charities are the recipients of charitable
donations, not the givers," defendant points out.

We do not agree with defendant's contentions. Even
affording it benefit of the presumption, we hold defendant
failed to carry the burden to prove it is a charitable
institution.

Given the structure of the corporation as set forth in the
charter and bylaws, as well as its manner of operation, the
record shows that defendant's overriding purpose is to own and
operate a private recreation center for the exclusive use of its
members and guests. In other words, the defendant does not
extend its benefits to an indefinite number of persons. See
Allaun v. First and Merchants Nat'l Bank, 190 Va. 104, 108, 56
S.E.2d 83, 85 (1949). Furthermore, the charter fails to state

7

any "not for profit" objective or any limitation requiring the corporation to be operated only in a nonprofit manner. Indeed, the corporation has been conducted as a for-profit organization as demonstrated by its lack of exemption from income taxes or from local real estate taxes.

Merely because the facilities have been made available "from time to time" to the Red Cross and the Boy Scouts, and because the corporation recently has been operated unprofitably, does not convert a for-profit operation to a charitable one. The only financial evidence offered in support of the plea in bar was the treasurer's recollections beginning in 1990 and the income tax returns from 1980 through 1994. No financial data from the corporation's 1964 organization to 1980 was presented. The relevant financial history of a corporation, and not just recent unprofitable years, must be examined to properly determine charitable status. The defendant had the burden to present such history and failed, or was unable, to do so.

Consequently, we conclude that the trial court erred in sustaining the plea of charitable immunity. We will reverse the judgment below and remand the case for further proceedings.

Reversed and remanded.

8