## CIRCUIT COURT OF LOUDOUN COUNTY

David A. Jacobs et al.

v.

Washington
Gas Light Co. et al.

Case No. 21146 (Consolidated)

BY JUDGE THOMAS D. HORNE

## May 26, 2000

The singular issue before the Court on special plea is whether the Northern Virginia Electrical Cooperative ("NOVEC" or "the Cooperative") is entitled to assert charitable immunity as a shield to plaintiffs' tort claims. At the time of the accident, the plaintiffs were residing in a home furnished with electricity provided by the Cooperative. Mere benefit to the plaintiffs does not make their claims meritless. In order to prevail, the Cooperative must demonstrate that it is a charitable institution. It cannot.

In its consideration of the instant plea, the Court is mindful of its responsibility to evaluate NOVEC not only on its structure as expressed in its articles and bylaws, but also on the manner of its operation. *Bailey v. Lancaster Ruritan Recreation Ctr.*, 256 Va. 221, 504 S.E.2d 621 (1998). Although sensitive to arguments which would abrogate the doctrine of charitable immunity, the Supreme Court of Virginia has recognized the primacy of the role of the legislature in overturning the well established rule permitting such a defense. *Memorial Hosp. v. Oakes, Adm'x*, 200 Va. 878, 108 S.E.2d 388 (1959). An excellent summary of the Virginia law relating to the evaluation of claims of charitable immunity is contained in *Davidson v. Colonial Williamsburg Foundation*, 817 F. Supp. 611, 612-14 (E.D. Va. 1993), a pertinent part of which is reviewed below (citation to authorities has been omitted).

Charitable immunity has been applied to bar certain claims as a matter of public policy. That policy favors the potential harm to a charity forced to pay damages over the right of recovery of one who has benefited from that charity. It does not preclude recovery by third persons not so benefited or preclude an injured person from seeking recovery against the individual employee of the charity who has caused the injury or damage. Charitable immunity does not lie to protect the charity from all tort liability. It does not avoid liability where the charity has failed to use due care in the selecting or retaining of its employees.

A determination as to whether an organization, such as the Cooperative, is a charitable institution depends upon whether that organization is maintained for gain, profit, or advantage. Any finding as to the status of such organization would depend upon both an examination of the charter documents as well as a factual determination as to whether it is operated for gain, profit, or advantage. In both its review of the organizational documents as well as its factual review, the Court has been provided with certain factors, although not exhaustive, to be considered.

In its review of the charter and bylaws of the Cooperative, the Court must determine whether such documents reflect a charitable or eleemosynary purpose. A rebuttable presumption exists that the organization operates in accordance with the organizational documents. After reviewing the organizational documents, the Court must then determine whether the Cooperative is operated for gain, profit, or advantage. In its determination, the Court may, among other things, consider the following factors: whether the organization's charter limits it to charitable or eleemosynary purposes; whether the organization's charter contains a "not-for-profit" limitation; whether the organization's goal is to break even; whether the organization earned a profit; whether any profit or surplus must be used for charitable or eleemosynary purposes; whether the organization depends on contributions and donations for its existence; whether the organization provides its services free of charge to those unable to pay; and whether the directors and officers receive compensation.

As noted earlier, in order for the Cooperative to prevail on the instant plea, the Court must find that it is not maintained for gain, profit, or advantage. *Danville Community Hosp. v. Thompson*, 186 Va. 746, 43 S.E.2d 882 (1947). A charity must not only further eleemosynary objectives but benefit an infinite number of persons. *Allaun v. First and Merchants National Bank of Richmond, Exec.*, 190 Va. 104, 56 S.E.2d 83 (1949); *Bailey v. Lancaster Ruritan Recreation Ctr.*, 256 Va. 221, 504 S.E.2d 621 (1998).

The instant cooperative permits the voluntary participation of those persons willing to pay the cost of membership. In exchange, those members can obtain electrical service at preferred rates. *Bush v. Aiken Electric Coop., Inc.*, 226 S.C. 442, 85 S.E.2d 716, 717 (1955). Additionally, the cooperative may assign a portion of the profits earned to a reduction in the cost of service to individual members. It does not depend upon charitable donations for its existence.

In reviewing the instant claim, this Court favors the analysis set forth in *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 215 F.2d 542 (4th Cir. 1954). The opinion of the Court in that case contains the following language:

> Obviously a rural electrical cooperative is not designed to accomplish the beneficial purposes in the public interest which a charitable association in the accustomed sense, such as a church, college or hospital, is organized to serve. It does not belong to the same category. It is essentially a business project designed to promote the convenience and material welfare of of [sic] its members rather than the common good. Rural electrification has added much to the comfort of residents of rural areas and this worthy purpose has been advanced by the federal government through the loan of funds under the Federal Rural Electrification Act, 7 U.S.C.A. § 901 et seq., and by the State of South Carolina in relieving the organizations of certain governmental controls and of certain taxes. The statutes of the State, however, do not specifically grant exemption from liability for tort, and *we do not think that we are justified in relieving them of a burden which inevitably attends the operation of a public utility and is regarded as an operating expense under modern conditions. The fact that the members of the association seek no profit as such, other than the enjoyment of electric service, does not transform the business venture into a charitable enterprise.*

*Id.* at 545 (emphasis added).

While the Cooperative may be exempt from federal or state taxes, this fact is not determinative of the outcome of this case. The reasons underlying such an exemption for taxes involve unrelated public policy considerations from those barring recovery for tortious conduct. Although a cooperative may serve a public purpose, it is principally organized to provide electrical service to its member at the lowest possible cost. *Id.* at 547.

The Cooperative is a profitable enterprise. While those profits may reap benefits for members, the Cooperative is under no legal obligation to use such

profits for charitable purposes. The fact that they may do so is of little consequence in the resolution of the special plea.

Further, there is no indication that the Cooperative is required by its charter or bylaws to forgive payment of utility bills by those unable to pay or that it has managed its affairs to further such charitable purposes. *Purcell v. Mary Washington Hosp.*, 217 Va. 776, 232 S.E.2d 902 (1977). Nor do the charter or bylaws command that the Cooperative furnish electric service to those unable to pay their electrical bills. To the contrary, the bylaws would appear to require that those members who fail to pay their bills be expelled from membership in the Cooperative.

NOVEC is a big business. Providing low cost electrical service to rural America is a project with a public purpose. However, neither that purpose nor the intentions of those who participated in the creation of electrical cooperatives makes such institutions deemed charitable for purposes of immunizing them from tort liability. They, like other public utilities, are able to consider such matters as a cost of doing business.

Accordingly, the special plea is overruled. The case is continued.

### August 3, 2000

This case came before the Court on the demurrers of the defendants, Engle Homes/Virginia, Inc., and Engle Homes, Inc., to Count III of the Second Amended Motion for Judgment and Bill of Particulars filed by the plaintiffs. Based upon a consideration of the pleadings, the Court finds that there are factual matters in controversy that preclude an adjudication of the Count on the pleadings. Accordingly, the demurrer is overruled.

The defendants, Northern Virginia Cooperative, Washington Gas Light Company, and Northern Pipeline Construction Company, have each moved to quash certain Notices of Depositions *Duces Tecum*. They contend that the depositions *duces tecum* seek information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Additionally, they assert that they are unreasonably cumulative and duplicative. Furthermore, it is suggested that the deposition requests are unduly burdensome and are designed to annoy and harass the defendants.

Based upon a review of the notices and of the papers filed with respect to the instant discovery motions, the Court is of the opinion that good cause exists to grant protection to the defendants in accordance with the provisions of Rule 4:1(c) of the Rules of the Supreme Court of Virginia.

Accordingly, the Court directs that discovery pursuant to the notices of depositions *duces tecum* is modified so as not to permit the following:

1. The deposition of the Chief Financial Officer, Northern Pipeline Construction Co.

2. The deposition of Frederick M. Kline, Senior V.P. and Chief Financial Officer of Washington Gas Co.

3. The deposition of Wilbur Rollins, Vice President, Finance, Northern Virginia Cooperative.

4. As to materials furnished and testimony rendered by those persons designated to appear pursuant to Rule 4:5(b)(6), any material or testimony relating to a time period other than the year 1998.