442

# CIRCUIT COURT OF THE CITY OF PORTSMOUTH

Khiron Moore et al.

v.

Maryview Medical
Center, etc., et al.

December 15, 2005

Case No. CL03-2448

BY JUDGE DEAN W. SWORD, JR.

This matter is currently before the court for determination of two pleas in bar: (1) The plea of sovereign immunity filed by the defendants, Ghent Family Practice, a division of the Department of Family and Community Medicine of the Eastern Virginia Medical School and Eastern Virginia Medical School (hereafter both are referred to as EVMS) and (2) The plea of charitable immunity filed by the defendants, EVMS Academic Physicians and Surgeons Health Services Foundation and Nicola J. Davies, M.D. (hereafter referred to as Foundation, Davies, or collectively as Foundation depending on the context).

After considering the evidence presented at a hearing held before the Court on November 8, 2005, and the respective arguments of counsel (all of these defendants are collectively represented by Mr. Huff) the court is of the opinion, for the reasons stated hereafter, that the pleas in bar are well taken and this matter is dismissed as to all of the defendants identified in the opening paragraph.

Initially it is agreed by counsel for each side that Ghent Family Practice is not a distinct entity from the medical school and thus there is in reality only one defendant, EVMS.

The sole witness called by all of the defendants was James F. Lind, Jr., whose current position is CEO of the Foundation. Mr. Lind also has held other administrative positions within EVMS since 1983. Through this witness, the following Exhibits were introduced and are evidence with respect to the motions before the Court:

Exhibit 1: copy of Acts of Assembly of 1964, Chapter 471, creating a "public body politic and corporate to be known as the 'Norfolk Area Medical Center Authority' . . .'";

Exhibit 2: copy of Acts of Assembly of 1975, Chapter 396 changing the name to "Eastern Virginia Medical Authority";

Exhibit 3: copy of Acts of the Assembly of 1987, Chapter 329, further changing the name to "Medical College of Hampton Roads";

Exhibit 4: copy of "Certificate of Assumed Names" of record in the Norfolk Circuit Court (recorded 9-5-95) reflecting the "fictitious name of 'Eastern Virginia Medical School'," used by the Medical College of Hampton Roads;

Exhibit 5: copy of certificate of incorporation issued by the Virginia State Corporation Commission on October 1, 1987, incorporating the Foundation;

Exhibit 6: copy of Foundation corporate Bylaws effective October 19, 1999;

Exhibit 7: copy of Internal Revenue Service ruling letter advising Foundation of its § 501(c)(3) status pursuant to the revenue laws of the United States. The letter is dated November 4, 1988;

Exhibit 8: copy of employment agreement dated July 1, 2000, between Foundation, Davies, and EVMS;

Exhibit 9: copy of Foundation financial statements for twelve-month period ending June 30, 2002;

Exhibit 10: affiliation agreement between Foundation and EVMS;

Exhibit 11: copy of agreement between EVMS and Bon Secours Maryview Medical Center for "Integrated Graduate Medical Education" for the 2001-02 academic year;

Exhibit 12: copy of "State Appropriation Indigent Care Apportionment Plan" for the 2000-2003 biennium.

In support of the charitable immunity plea, Mr. Lind also provided the following testimony, which I shall summarize and give reference to the transcript:

(1) The mission of the Foundation is to provide medical services to the community without regard to the ability of the patient to pay. (T. p. 49.)

(2) When a patient can pay, either with private medical insurance or otherwise, payment is made in much the same manner as a private physician would collect. (T. p. 50.)

(3) The Commonwealth of Virginia funds by way of appropriation certain monies for indigent medical care which is a part of the Foundation's budget. (T. pp. 53-55.)

(4) Pursuant to agreement (Exhibits 10 and 8), the Foundation pays any "profits" received from the professional services rendered by the member physicians to EVMS largely to help fund faculty salaries. (T. pp. 49-54.)

(5) The Foundation physicians see both indigent and paying patients without any prior determination. (T. pp. 59-61.)

*Sovereign Immunity*

Since Virginia law has drawn a distinction in this area, it is important for this decision to note that the Motion for Judgment makes allegations of simple negligence only and so the decisional process will be limited to the application of the various legal principles as they relate to simple negligence.

It is also important to note that "a government agent entitled to the protection of sovereign immunity is not immunized from suit. Rather, the degree of negligence which must be shown to impose liability is elevated from simple to gross negligence." *Couplin v. Payne*, 270 Va. 129, 136, 613 S.E.2d 592 (2005). In our matter, this rule has no further application because immunity is sought for the sovereign only.

Without doubt, the legal rule "of sovereign immunity is alive and well in Virginia. . . . a special plea of sovereign immunity, if proven, creates a bar to a plaintiff's claim of recovery." *City of Chesapeake v. Cunningham*, 268 Va. 624, 633, 604 S.E.2d 420 (2004) (internal citations omitted).

The immunity of a municipal government is not automatic, however. The case law draws a distinction between governmental and propriety functions with only governmental functions being immune. *City of Chesapeake v. Cunningham, supra*, at 633-34. Thus "when a municipality plans, designs, regulates, or provides a service for the common good it performs a governmental service." *City of Chesapeake v. Cunningham, supra*, p. 634. On the other hand "routine maintenance or operation of a municipal service is proprietary." *City of Chesapeake v. Cunningham, supra*, at pp. 634-35.

Admittedly, EVMS is not a municipal government, but, under its charter by the 1964 Acts of the Assembly, it seems to be granted at least in part some of the legal attributes of a municipal entity. Thus if we can determine that its function meets the definition of "governmental," then it clearly is entitled to immunity.

EVMS directs the court to Virginia Code § 23-14 which provides *inter alia* "The . . . Eastern Virginia Medical School . . . are hereby classified as governmental instrumentalities for the dissemination of education. . . ."

The court is, therefore, of the opinion that the function of EVMS is governmental within the definition established by the Virginia Supreme Court, providing a service, education, for the common good of the citizens of the Commonwealth.

The Fourth Judicial Circuit of Virginia has also reached the same result in the following cases: *Jones v. Eastern Virginia Medical School*, CL03-733 (Leafe, J., February 5, 2004) appeal refused Record No. 041084; *Mann v. Medical College of Hampton Roads*, L98-621 (Poston, J., July 29, 2003), appeal refused Record No. 03-477; *Orndoff v. Ghent Family Medical Practice*, L98-628 (Morrison, J., May 27, 1998); *Gray v. Eastern Virginia Medical Authority*, L86-2084 (Stewart, J., February 13, 1987).

Finally, in a case involving the University of Virginia Medical School, the Supreme Court has recently found that, subject to the special statutory waiver contained in Virginia Code § 8.01-195.3 (sometimes called the Virginia tort claims act), "absent an express statutory or constitutional provision waiving sovereign immunity, the Commonwealth and its agencies are immune. . . ." *Rector and Visitors of the Univ. of Va. v. Carter*, 267 Va. 242, 244, 591 S.E.2d 76 (2004).

*Charitable Immunity*

As a preface, we again note that the claims made in the Motion for Judgment are simple negligence and, once again, the decisional process will apply only to rules of a simple negligence claim.

It is generally accepted that the doctrine of charitable immunity is a court made rule with the seminal Virginia case being *Weston's Adm'x v. Hospital of St. Vincent of St. Paul*, 131 Va. 587, 107 S.E. 785 (1921).

The facts in *Weston* are fairly similar to our case. The plaintiff was admitted to the hospital for the delivery of her child. She was a "pay patient" and the charitable nature of the hospital was unknown to the plaintiff. The child was delivered and, due to the alleged negligence of nurse employees of the hospital, died. The court noted:

> The defendant is a charitable institution, conducting a hospital solely for philanthropic and benevolent purposes. It is not conducted for profit, has no stockholders, and pays no dividends. . . . It receives its income chiefly from pay patients and from donations.

*Weston*, at p. 590.

In a lengthy opinion, Justice Burks reviews the then existing case law concerning charitable immunity and in affirming the lower court established the rule that (1) the immunity defense may be raised solely against a beneficiary of the charity, (2) that those who pay for services are also included in the beneficiary class, and (3) the sole exception is that "due care shall be exercised in the selection and retention of their employees." *Weston*, at p. 611.

We then fast forward to the case of *Cowan v. Hospice Support Care*, 268 Va. 482, 603 S.E.2d 916 (2004). While reaffirming the principles that have been consistently applied since *Weston*, the Supreme Court acknowledged for the first time that charitable immunity may not be raised as a defense to claims of gross negligence or willful and wanton negligence. *Cowan*, at p. 488.

Finally we can look to a case decided slightly more than thirty days ago, *Ola etc. v. YMCA of South Hampton Roads, Inc.*, 270 Va. 550, 621 S.E.2d 70 (2005). Again, the rule as developed by *Weston* and modified by *Cowan* is shown to be alive and well in Virginia, but, more importantly, the court sets certain criteria to determine whether an organization is charitable in nature and purpose.

> First, the entity must show it is organized with a recognized charitable purpose and that it operates in fact in accord with that purpose. "In conducting this inquiry, Virginia courts apply a two-part test, examining (1) whether the organizations articles of incorporation have a charitable or eleemosynary purpose and (2) whether the organization is in fact operated consistent with that purpose. . . ." *Davidson v. Colonial Williamsburg Foundation*, 817 F. Supp. 611, 613 (E.D. Va. 1993).

*Ola*, pp. 72-73. This test obviously requires an examination of the evidence.

Exhibit 6, the Bylaws of the Foundation, in the "Mission Statement" have two provision that are worth noting:

The Foundation will strive to enhance the capacity of the faculty of EVMS to provide excellence in their education, research, and service roles. . . . The Foundation will sponsor the clinical practice of medicine in the academic setting to provide the faculty the opportunity to reach excellence in healthcare delivery to students at all levels of training. . . . In carrying out the above-stated purposes, the Foundation shall engage the services [of full or non-full time faculty members] . . . pursuant to the terms, provisions, covenants, and conditions of an Initial Affiliation Agreement dated as of July 1, 1989. . . .

(Exhibit 10.)

A reading of the entire Bylaws shows that the Foundation has no stockholders and provides a complex scheme for the election of its Board of Directors, many of whom are selected by the Board of Visitors of EVMS. The visitors are appointed in accord with the 1987 Acts of Assembly, Chapter 329, which directs the selection to be made by the City Councils of the Greater Hampton Roads area.

Article XI, part 11.01, also provides *inter alia*: "To the extent of any inconsistency between the terms and provisions of the Affiliation Agreement and the Articles or these Bylaws, the terms . . . of the Affiliation Agreement shall govern."

Section 7.09 provides for the distribution of net operating revenue and, significantly, does not provide for the payment of a dividend.

Several other exhibits tend to prove the charitable criteria.

Exhibit 10, section 10, discusses the necessity for "Indigent care billing to justify the full State appropriation by the Commonwealth of Virginia."

Exhibit 7 proves the Foundation is tax exempt under § 501(c)(3) of the Internal Revenue Code.

Exhibit 12 is a formal policy for the provision of personal health services to medically indigent persons in eastern Virginia.

A summary of the evidence discloses the Foundation provides two services, actual medical treatment to the indigent and funding of the educational purposes of the school. Each of these functions are in the opinion of the court tradition charitable or eleemosynary functions in our society. The court further finds that the Foundation is consistently operated with this goal in mind. Therefore, we must come to the conclusion that the *Ola, supra*, test is met and the Foundation is entitled to charitable immunity.

Again the court has reviewed several cases decided by the Judges of the Fourth Judicial Circuit involving the Foundation in similar situations. In each of these cases, the trial court found the defendant foundation to be entitled to

charitable immunity. *Kremen etc. v. Bon Secours-DePaul Medical Center, etc.* (James, J., March 29, 2004); *Mullen, etc. v. Bonnie J. Dattell, M.D., et al.,* (Fulton, J., May 25, 2005).

The final questions is whether Davies is also entitled to charitable immunity. The case of *Moore, etc. v. Warren*, 250 Va. 421, 423, 463 S.E.2d 459 (1995), answers this question in the affirmative. "Denying these servants and agents the charity's immunity for their acts would deny the charity immunity for its acts."

Exhibits 8 and 9 establish the relationship of Davies as an employee, servant, and agent of Foundation. She, therefore, is also entitled to charitable immunity.