# CIRCUIT COURT OF PRINCE WILLIAM COUNTY

Juan R. Jiminez

    v.

Didlake, Inc.

February 26, 2009

BY JUDGE MARY GRACE O'BRIEN

This matter came before the Court on February 17, 2009, on Defendant's Plea in Bar and Plaintiff's Opposition thereto, and the Court, having heard argument of the parties' counsel, took the matter under advisement.

<em>Facts</em>

This case arises out of a femoral shaft fracture Plaintiff, Juan R. Jiminez, sustained while in the care of Defendant, Didlake, Inc. Plaintiff is twenty-five years of age and has been diagnosed with cerebral palsy and mental retardation. Defendant is a non-stock corporation, serving to educate and foster the development of programs for mentally retarded, multiply handicapped, and emotionally disturbed persons. Plaintiff attended Defendant's day program activities, and, on April 13, 2007, when placing Plaintiff back in his wheelchair after changing him, two Didlake employees heard Plaintiff verbalize a noise of discomfort. The Didlake staff contacted Plaintiff's mother, who took Plaintiff to the Prince William Hospital Emergency Room. Plaintiff was diagnosed with a right femoral shaft fracture.

On May 7, 2008, Iris N. Figueroa-Jiminez and Awildina Figueroa, as co-legal guardians and next friends of Juan R. Jiminez, filed this suit against Didlake, alleging Defendant is responsible for the injuries and damages

incurred by Plaintiff under the doctrine of *respondeat superior*. In 2009, Defendant filed a Plea in Bar to Plaintiff's Complaint on the grounds that Didlake, Inc., was shielded from any liability under the doctrine of charitable immunity. The Court heard argument of the parties on February 17, 2009.

## Summary

The law in Virginia is well-settled regarding the doctrine of charitable immunity. Under Virginia law, "a charitable institution is immune from liability to its beneficiaries for negligence arising from the acts of its servants and agents. . . ." *Bailey v. Lancaster Ruritan Recreation Center, Inc.*, 256 Va. 221, 224 (1998). The Supreme Court of Virginia, ruling in *Ola v. YMCA of South Hampton Roads*, explicates the two-part test an organization must satisfy to be classified as a charitable organization. 270 Va. 550 (2005). First, the entity must be organized with a charitable purpose, and, second, the entity must operate itself consistently with that eleemosynary purpose. *Id.* at 556.

In assessing whether an entity was organized with a charitable purpose, one must examine the organization's Articles of Incorporation and ascertain if they embody a charitable purpose. Assessing whether the organization is operating consistently with that purpose is not a clear-cut inquiry and, as plaintiff's counsel asserts, should be determined on a case-by-case basis. The Supreme Court of Virginia has provided a non-mutually exclusive and exhaustive list of factors in *Ola* that courts should consider in such a determination, such as examining the financial purpose of the entity, its profits, and whether it qualifies for tax exemptions. 256 Va. at 557-58. If the entity has met the above two-part test, it must satisfy one additional consideration to enjoy the bar of charitable immunity; it must establish that the plaintiff tort claimant was a beneficiary of the charitable institution at the time of the alleged incident. *See Straley v. Urbanna Chamber of Commerce*, 243 Va. 32, 33 (1992).

Defendant argues that, in assessing these elements, Didlake is a charitable institution and, thus, is immune from liability to Plaintiff for possible negligence arising from the acts of its employees under the doctrine of charitable immunity.

Plaintiff, in opposition to Defendant's Plea in Bar, argues that Didlake, while charitable in nature, is not a charitable institution, but rather it operates as a large, profitable business and, therefore, is not subject to the doctrine of charitable immunity. For the reasons stated below, the Court agrees with Defendant and sustains Defendant's Plea in Bar.

*Analysis*

The question presented in this case is whether Defendant is a charitable organization that would enjoy the bar of charitable immunity. As discussed above, three elements are necessary to establish an entity as a charitable organization that qualifies for charitable immunity. Virginia courts apply a two-part test, considering the first two elements: (1) whether the organization's articles of incorporation have a charitable or eleemosynary purpose and (2) whether the organization operates consistently with that purpose. *Davidson v. Colonial Williamsburg Foundation*, 817 F. Supp. 611, 613 (E.D. Va. 1993). The final element a defendant must establish to enjoy the bar of charitable immunity is that the tort claimant was a beneficiary of the charitable institution at the time of the alleged incident. *See Straley*, 243 Va. at 33. This last element was not in dispute, as the stipulated facts between the parties agreed that Plaintiff was in the care of Defendant at the time of the incident and the services were paid for by Medicaid and Defendant itself.

With respect to the first prong of the two-part test, Defendant's June 12, 1972, Articles of Incorporation clearly express a charitable purpose as a non-stock organization thereby satisfying the first element. Paragraph 2 indicates that Didlake, Inc., was organized to "promote the welfare of the mentally retarded, multiple handicapped, and emotionally disturbed persons, including, but not limited to, their education." Defendant's Articles of Incorporation also set out further purposes of "foster[ing] the development of programs in the[] behalf [of those with special needs]," and "encourag[ing] research relating to such persons." Paras. 3 and 4, 1972 Articles of Incorporation of the Didlake School. The issue is whether defendant, in fact, operated consistently with its charitable purpose.

The Supreme Court of Virginia has set forth a rebuttable presumption that an entity operates as a charitable institution in accordance with its eleemosynary purpose if the organization's charter sets forth a charitable or eleemosynary purpose. *Memorial Hospital, Inc. v. Oakes*, 200 Va. 878, 883 (1959). It is Plaintiff's burden to rebut this presumption in order to demonstrate the bar of charitable immunity does not apply to Defendant.

The Supreme Court of Virginia has established a non-mutually exclusive and non-mutually exhaustive list of factors that aids in assessing whether a charitable organization operates consistently with its charitable purpose. Such factors include:

(1) Does the entity's charter limit the entity to a charitable or eleemosynary purpose?

(2) Does the entity's charter contain a not-for-profit limitation?

(3) Is the entity's financial purpose to break even or earn a profit?

(4) Does the entity in fact earn a profit and, if so, how often does that occur?

(5) If the entity earns a profit (a surplus beyond expenses) must that be used for a charitable purpose?

(6) Does the entity depend on contributions and donations for a substantial portion of its existence?

(7) Is the entity exempt from federal income tax and/or local real estate tax?

(8) Does the entity's provision of services take into consideration a person's ability to pay for such services?

(9) Does the entity have stockholders or others with an equity stake in its capital?

(10) Are the directors and officers of the entity compensated and, if so, on what basis?

*See, e.g., Oakes*, 200 Va. at 883; *Weston v. Hospital of St. Vincent*, 131 Va. 587, 590 (1921); *Bailey*, 256 Va. at 225. The Court has, however, warned that the "presence or absence of any factor is not determinative[, but] whether an entity operates as a charity turns on the facts of each case and not the particular type of institution." *Ola*, 270 Va. at 557 (citing *Davidson*, 817 F. Supp. at 614).

Defendant argues that it operates as a Section 501(c)(3) tax-exempt organization, which is also exempt from real estate, personal property, and sales taxes, and that, upon dissolution, it will distribute its assets to another 501(c)(3) organization. Further, Defendant emphasizes that its Bylaws state that Directors are volunteers and receive no compensation and that no proceeds of the net income shall personally benefit any Director. Defendant cites and details several services it provides to adults with disabilities, including, but not limited to, psychosocial rehabilitation, habilitation, rehabilitation/habilitation, group supported employment programs, sheltered employment programs, and individual supported employment program.

Defendant presented its evidence at trial via the testimony of Richard Parr, Didlake, Inc.'s CEO. Mr. Parr testified that Didlake's assets are donated to a 501(c)(3) tax-exempt organization with a similar purpose. He further expanded upon Didlake's services, such as providing work opportunities for those adults with disabilities. Mr. Parr testified that, out of 925 adults that Didlake serves in this specific capacity, 430 are individuals with significant disabilities for whom funding is typically unavailable. Defendant provides funding for the salaries of these 430 individuals which translates to approximately $5 million per year. Mr. Parr admitted that,

while Didlake's tax returns indicate an operational surplus for the organization, 100% of this surplus is put towards Defendant's services and organization.

Plaintiff characterizes Defendant as a big business that is not immune from liability for the torts of its employees. Plaintiff asserts that Defendant, while benefiting society, operates itself as a large, consistently profitable business. Plaintiff analogizes defendant to such entities as the Colonial Williamsburg Foundation and The University of Virginia Health Services Foundation, both of which the Fourth Circuit or the Supreme Court of Virginia have denied charitable immunity.

The Court has had an opportunity to review these cases and has found distinctions between these entities that the Supreme Court of Virginia and the Fourth Circuit have not found to be charitable organizations immune from tort claimants and Defendant in the case at bar. In *Davidson v. Colonial Williamsburg Foundation*, the Fourth Circuit denied an organization charitable immunity, emphasizing the entity was "maintained for gain, profit, or advantage." 817 F. Supp. 611, 613 (E.D. Va. 1993) (citing *Purcell v. Mary Washington Hospital Association, Inc.*, 217 Va. 776, 779 (1977) (citation omitted).

While the Colonial Williamsburg Foundation's Articles of Incorporation stated "the Corporation is organized and operated exclusively for charitable and educational purposes," with the principal purposes set forth as "to preserve, restore, reconstruct, or otherwise maintain historical structures, objects, works of art, and locations and to promote, encourage, and carry on any historical interpretive, research, or educational activities related thereto," its Articles of Incorporation did not state the Foundation operated exclusively "not-for-profit." *Davidson*, 817 F. Supp. at 615. The Fourth Circuit found the Foundation's financial goal was to turn a profit, as it had enjoyed an operating surplus in four of the five years preceding the hearing. *Id.* at 616. Further, the Court found that the Foundation was not dependent on contributions for its continued existence, as it received substantial income from admissions fees, product sales, and hospitality operations. *Id.* The fact that the Foundation paid significant salaries to its chief executive and other officers also tipped the scales in favor of the Fourth Circuit's holding that the Foundation was a not a charitable organization for purposes of charitable immunity. *Id.* at 617.

In *University of Virginia Health Services Foundation v. Morris*, the Supreme Court of Virginia's determination of whether the Foundation was a charitable organization for purposes of charitable immunity hinged on the manner in which the Foundation actually conducted its affairs. The Court

found it to be a profitable commercial business with extensive revenue and assets. 275 Va. 319, 340 (2008). The Court held that, while the Foundation stated a charitable purpose in its Articles of Incorporation and even though it provided medical care to indigents, the Foundation did not operate consistently with such a purpose, as it pursued numerous collection actions in court and also had as its purpose to increase revenue and generate funds for salaries and incentive payments. *Id.* The Court noted it also had a small ratio of charitable work to revenues. *Id.*

Plaintiff argues that Defendant operates itself as a profitable business. Plaintiff specifically cites that, while Defendant's tax returns indicate it reported $42 million in revenue, it only received $80,351 (.02%) as donations. Plaintiff inquired as to Defendant's growing market area, covering most of Virginia, D.C., and parts of Maryland, Defendant's marketing campaign, and Defendant's acquisition of six other facilities to bolster his argument. This fact, however, is not dispositive of the issue.

Considering the totality of the relevant facts and circumstances, the Court finds that Defendant satisfies the two-prong test granting it charitable immunity. Its Articles of Incorporation explicitly state that it is "organized for eleemosynary or charitable purposes only and not for pecuniary profit." As such, as previously discussed, Plaintiff had a rebuttable presumption to overcome that it did not operate consistently with that objective. However, in light of the facts that its officers and directors receive no compensation from its profits, that Defendant gives approximately $17.3 million a year to disabled adults, and the intrinsically charitable nature of its operation in caring for and assisting the employment of handicapped adults, Plaintiff did not overcome the rebuttable presumption that Defendant did not operate in accord with its charitable purpose. As such, its charitable funds are protected from tort claims under the doctrine of charitable immunity.

For the reasons stated above, Defendant's Plea in Bar is sustained, and this case is dismissed with prejudice.