## CIRCUIT COURT OF HENRICO COUNTY

Administrator
of the Estate of
Aleksandr E. Zabrovskiy,
deceased

    v.

Beth Sholom Home
of Virginia, Inc.

October 25, 2012

Case No. CL10-2155

BY JUDGE CATHERINE C. HAMMOND

This matter is before the Court on Defendant's plea in bar. This Court heard the evidence on October 12, 2012. The issue is whether Defendant is immune from tort liability under the common law doctrine of charitable immunity.

In 2007, Mr. Zabrovskiy was a patient at a local hospital. He moved from the hospital to the defendant nursing home, Beth Sholom Home of Virginia, Inc. ("Beth Sholom"). While at Beth Sholom, he received treatment for a bedsore on his right foot. About a year after admission, he suffered fractures to his right leg. On July 22, 2008, he was admitted again to the hospital and diagnosed as having gangrene. His right leg was amputated. He died on August 15, 2008.

The administrator of the estate filed suit claiming medical malpractice and negligence on the part of Beth Sholom's employees. There is no claim for gross negligence. Beth Sholom argues that it is a private charity with a charitable purpose, operating in accord with that purpose. Plaintiff argues that Beth Sholom does not operate in accordance with its charitable purpose and is not immune.

Virginia law protects some non-governmental organizations from certain types of tort liability. The protection of charitable immunity does not extend to acts of gross negligence or willful and wanton negligence.

*Cowan v. Hospice Support Care, Inc.*, 268 Va. 482 (2004). The protection does not extend to negligent hiring or retention or to claims by people who were not beneficiaries of the organization. *Ola*; *Weston's Administratrix v. Hospital of St. Vincent*, 131 Va. 587 (1921). In other states, the doctrine has been limited or abolished in recognition that charitable immunity deprives a tort victim of compensation even though the tort can be proved. *See The Quality of Mercy: "Charitable Torts" and Their Continuing Immunity*, 100 Harv. L. Rev. 1382 (1987).

The protection of charitable immunity is intended to further the "the public policy that the resources of charitable institutions are better used to further the institution's charitable purposes than to pay tort claims lodged by the charity's beneficiaries." *Ola v. YMCA of South Hampton Roads, Inc.*, 270 Va. 550, 555 (2005). In *Ola*, the Supreme Court identified ten factors to weigh. The Supreme Court in *Ola* identified ten factors for consideration. Does the entity's charter limit the entity to a charitable or eleemosynary purpose? Does the entity's charter contain a not-for-profit limitation? Is the entity's financial purpose to break even or earn a profit? Does the entity in fact earn a profit, and, if so, how often does that occur? If the entity earns a profit, a surplus beyond expenses, must that be used for a charitable purpose? Does the entity depend on contributions and donations for a substantial portion of its existence? Is the entity exempt from federal income tax and/or local real estate tax? Does the entity's provision of services take into consideration a person's ability to pay for such services? Does the entity have stockholders or others with an equity stake in its capital? Are the directors and officers of the entity compensated and if so, on what basis? These factors are not exclusive, and no single factor is determinative. *Id.* at 557. "[W]hether an entity operates as a charity turns on the facts of each case and not on the particular type of institution." *Id.*

A variety of organizations have claimed charitable immunity from tort liability to their beneficiaries with mixed results. Not-for-profit hospitals used to assert immunity on a frequent basis, but did not always succeed. *Compare Purcell v. Mary Washington Hosp. Ass'n*, 217 Va. 776 (1977) (holding hospital not entitled to charitable immunity), *with Memorial Hosp., Inc. v. Oakes*, 200 Va. 878 (1959) (holding hospital entitled to charitable immunity). In 1974, the General Assembly voted to limit the doctrine of charitable immunity and, as a result, most hospitals are no longer immune, even if they are not-for-profit institutions. Va. Code § 8.01-38. A hospital is immune from tort liability only if it "renders exclusively charitable medical services for which service no bill for service is rendered to nor any charge is ever made to the patient" or there is a written agreement that the plaintiff became a patient without any obligation to pay. Va. Code § 8.01-38.

Organizations that have been entitled to immunity include the YMCA, *Ola v. YMCA of Hampton Rds., Inc.*, 270 Va. 550 (2005); *Boan v. Peninsula YMCA*, 18 Va. Cir. 145 (Newport News City 1989), a nursing home,

*Rogers v. Virginia Home*, 83 Va. Cir. 423 (Richmond City 2011), churches, *Egerton v. R. E. Lee Mem'l Church*, 395 F.2d 381 (4th Cir. 1968), *Henley v. Woodford*, 82 Va. Cir. 185 (Pittsylvania Co. 2011), educational institutions, *Ettlinger v. Trustees of Randolph-Macon Coll.*, 31 F.2d 869 (4th Cir. 1929), *Kegley v. Hanover Acad., Inc.*, 79 Va. Cir. 754 (Hanover Co. 2008), an organization assisting to the handicapped, *Jiminez v. Didlake, Inc.*, 78 Va. Cir. 156 (Prince William Co. 2009), and a medical foundation providing indigent care, *Moore v. Maryview Med. Ctr.*, 71 Va. Cir. 442 (Portsmouth City 2005). Organizations that have not succeeded in claiming immunity include the Colonial Williamsburg Foundation, *Davidson v. Colonial Williamsburg Found.*, 817 F. Supp. 611 (E.D. Va. 1993), a college, *Rodasevik v. Virginia Intermont Coll.*, 633 F. Supp. 1084 (W.D. Va. 1986), a not-for-profit physician group affiliated with a public hospital, *MacArthur v. University of Va. Health Services Found.*, 275 Va. 319 (2008), a community recreation center, *Bailey v. Lancaster Ruritan Recreation Ctr., Inc.*, 256 Va. 221 (1998), and a church school, *Johnson v. Church Sch. in the Diocese of Va., t/a St. Catherine's Sch.*, No. LL-932-W, 1988 WL 619123 (Va. Cir. Richmond City 1988).

In *Weston's Administratrix v. Hospital of St. Vincent*, the Supreme Court reviewed the law prevailing in different jurisdictions, and rejected some of the theories underlying the doctrine of charitable immunity. The Court decided that the hospital should be immune under Virginia law, unless it had been negligent in hiring unskilled employees. The Court explained the public policy as furthering a relationship between the beneficiary, paying or non-paying, and the institution. The Court reasoned that it is the nature of the institution, charitable or not, that determines its immunity.

In a later case, *Hill v. Leigh Memorial Hospital, Inc.*, 204 Va. 501 (1963), the Court reaffirmed the doctrine of charitable immunity, putting new emphasis on the role of philanthropy in relieving the public of responsibility to care for the needy. "When a portion of the responsibility therefore is borne by the gifts of the philanthropic-minded, so much of the burden is removed from the public. If a portion of those gifts is diverted to the payment of tort claims, without restriction, the spirit and intent of the gifts are, at once, nullified and that much of the burden is again cast upon the public." 204 Va. at 507.

Turning to the case at bar, this Court concludes that Beth Sholom does have charitable immunity for the following reasons. Beth Sholom operates a 116-bed nursing home in Henrico County. Out of the 116 nursing home beds, 87 are eligible for Medicaid reimbursement. At the same campus, Beth Sholom operates an assisted living facility and a clinic. Beth Sholom is organized as a non-stock, not-for-profit corporation, and its articles of incorporation state a charitable purpose. Because of this, "there is a rebuttable presumption that [Beth Sholom] operates as a charitable

institution in accordance with that purpose." *Ola*, 270 Va. at 557 (citations omitted).

Other evidence supports Beth Sholom's claim that it is a charity. Beth Sholom has a volunteer board of directors. Its bylaws, article 2, section 5, prohibit any director from receiving a salary for his or her services. Beth Sholom is exempt from federal taxation pursuant to Internal Revenue Code § 501(c)(3). Beth Sholom receives gifts from people in the community, and those gifts may be deducted from the donor's income under the Internal Revenue Code. Article 6 of the charter requires that, upon dissolution of the corporation, any remaining assets must go to "some other religious or charitable organization" operating for purposes similar to those of Beth Sholom.

To rebut the presumption that Beth Sholom is operating as a charity, Plaintiff points to Defendant's financing arrangements and operational details. The evidence showed that Beth Sholom generally operates like a for-profit nursing home. It obtains payment from Medicaid, insurance contracts, and "self pay" arrangements. Its annual revenues have exceeded expenses in three out of four recent years, supporting Plaintiff's argument that it operates as a for-profit, regardless of its charter. However, Mr. Bellotti, the chief financial officer, testified that the maximum reimbursement for a Medicaid patient is usually less than the cost of care for that patient. He also testified that excess revenue has been used only for designated capital improvements or for resident services. No revenues have inured to the benefit of any director or employee, and salaries are not unreasonable. These uses of the surplus support Beth Sholom's argument that it operates within the mission stated in its charter.

Plaintiff also points to evidence that Beth Sholom does not provide "free" services. Mr. Bellotti testified that, if a resident does not pay, he or she is required to leave. Beth Sholom also has an active practice of collecting debts. However, Mr. Farmer, the administrator, testified that he could not recall an instance in the past five years when a resident had to leave for non-payment. He also explained that Beth Sholom has assisted residents, whose resources are depleted, in obtaining Medicaid. While it is true that residents of Beth Sholom are paying for services from one source or another, this fact has minimal legal importance. Ever since 1921, when the Court decided *Weston's Administratrix v. Hospital of St. Vincent*, the institution's receipt of payment for care has not governed its status as a charity. The Court explained why the duty of care imposed on the hospital cannot fluctuate based on the wealth of the patient and why the duty to protect against unskilled employees must be the same for rich and poor. 131 Va. at 597. That a paying patient can seek and receive the services of a charitable organization does not change the nature of that organization. *Id.* at 604.

Beth Sholom's receipt of gifts is a more difficult issue. This evidence can be argued by both Plaintiff and Defendant in support of their contrary arguments. Mr. Bellotti testified, and the tax returns showed, that Beth Sholom receives gifts every year. A full-time fundraiser is employed. Mr. Bellotti testified that, without donations, Beth Sholom would not meet its expenses and could remain solvent only through changes in operations. This appears similar to the situation in *Ola*, where the trial court found that the YMCA was a charity, in part, because it relied on donations. However, in *Ola*, the YMCA received 29% of its income from donations, which the Supreme Court referred to as a "significant" amount. *Ola*, 131 Va. at 590. Here, Beth Sholom receives, on average, less than 6% of its income from donations. In *Davidson v. Colonial Williamsburg Foundation*, the Court found that the defendant was not dependent upon income from gifts where the gifts supplied only 4.9% to 8% of revenues. 817 F. Supp. at 617. While the gifts to Beth Sholom are important, they do not appear to be necessary to the continued existence of the nursing home. The evidence about gifts supplies Plaintiff's strongest argument, but it is not enough to outweigh the other evidence of charitable mission and operation.

All of these facts must be considered together. On the whole, the evidence does not rebut the presumption flowing from the charter, and the weight of the evidence proves that Beth Sholom operates as a charity, immune from Plaintiff's tort claims. Beth Sholom's plea in bar is sustained.