Present:  Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and
Agee, JJ., and Russell, S.J.

GAIL K. ETHERTON                           OPINION BY
                              SENIOR JUSTICE CHARLES S. RUSSELL
     v.  Record No. 032104              June 10, 2004

JOHN DOE

                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     Gaylord L. Finch, Jr., Judge

     This appeal turns upon the sufficiency of the evidence to
frame a jury issue with respect to assault and willful and
wanton conduct in a non-contact automobile tort case.  Gail K.
Etherton, the plaintiff below, and her daughter, Deborah
Etherton, were the only witnesses who testified to the
relevant events at trial, and the facts will be stated in
accordance with their testimony.

     On February 1, 2001 at about 3:30 p.m., Gail Etherton was
driving her car west on Route 29 in the City of Fairfax.  Her
front-seat passenger was her daughter, Deborah.  Mrs.
Etherton, intending to make a left turn on to Pickett Road,
was in the left turn lane as she approached the intersection.
Because the traffic light at the intersection had turned red,
she came to a stop behind a white BMW sedan.  She could see
that it was occupied by a male driver and a female passenger.
When the light turned green, the white vehicle failed to
proceed.  Drivers who were stopped in traffic behind the
Etherton car began "honking" their horns.  The white sedan

"wouldn't move at all," and the driver behind the Etherton car "kept blowing the horn" until the white sedan finally turned left on to Pickett Road.

There were two southbound lanes of travel on Pickett Road and the outside of each lane was bordered by a curb. The white BMW occupied the right lane and Mrs. Etherton remained in the left lane. As the two cars traveled side by side, the driver of the BMW "kept watching" and "staring" at Deborah. She testified: "[H]e kept watching me . . . and Mom told me, Don't look at him. But I noticed he kept staring at me the whole time he was trying to drive up the road." The two cars came to a stop side by side at a red light at the intersection of Route 50, where Mrs. Etherton glanced over to see the driver of the white BMW. She testified that he appeared to be a tall man of oriental descent with a woman passenger.

After the light turned green, the two cars crossed Route 50 and continued southbound. Mrs. Etherton testified that the white BMW then crossed over into her lane: "It veered over very quickly at my fender and then returned to the lane that it was in." The driver of the BMW gave no signal or other warning before crossing into her lane and there was no apparent obstruction in his lane to require such a maneuver. She said: "It scared me because I was afraid that he was going to hit the front of my car. And I veered over to the

2

left to try to avoid him."  The BMW then returned to the right lane.

A "very short time" later, the driver of the BMW repeated this maneuver, coming even further into the left land and forcing Mrs. Etherton to swerve "very close" to the curb.  The BMW again returned to the right lane and came to a stop at another traffic light.  Mrs. Etherton came to a stop in the left lane but remained behind the BMW because she was "really, really frightened."  She said that the maneuver "just happened so quick.  It was bizarre. . . . I didn't want to have any confrontation."

After this light turned green, the BMW seemed to accelerate and Mrs. Etherton thought "that the whole incident was over.  And so I went ahead and started up the road, also.  And he pulled in front of me very quickly without signaling or anything and just jerked his car in front of my car and slammed on the brakes as hard as he could.  And I knew I was going to hit him. . . . And I held on to the steering wheel so tight, and I almost stood . . . pushed down on the brake so hard.  You could smell the rubber from both cars, and the smoke was coming.  I hit the curb.  I wasn't going to hit him because I didn't want her [Deborah] to hit the windshield."  Her car made no contact with the BMW.  The impact with the curb caused her to strike the steering wheel with her right

3

side.  That blow later resulted in an infected hematoma in the abdominal wall requiring surgery.  After the impact with the curb, the BMW returned to the right lane and drove away.

Because the driver of the white BMW was never identified, Mrs. Etherton brought this action against "John Doe" in three counts:  Negligence, assault, and willful and wanton conduct justifying punitive damages.  At the jury trial, the court sustained defense motions to strike the plaintiff's evidence with respect to the assault count and the willful and wanton conduct count.  The case was submitted to the jury only on instructions covering ordinary negligence.  The jury returned a verdict for the defendant and judgment was entered on it.  Mrs. Etherton assigned error to the trial court's action in striking the evidence and we awarded her an appeal.

A motion to strike the plaintiff's evidence should be granted only when it plainly appears that the court would be compelled to set aside any verdict found for the plaintiff as being without evidence to support it, e.g., Green v. Smith, 153 Va. 675, 679, 151 S.E.2d 282, 283 (1930), and it is axiomatic that any fact that can be proved by direct evidence may be proved by circumstantial evidence.  To establish the tort of assault, the plaintiff must prove that the defendant performed "an act intended to cause either harmful or offensive contact with another person or apprehension of such

4

contact, and that creates in the other person's mind a reasonable apprehension of an imminent battery." Koffman v. Garnett, 265 Va. 12, 16-17, 574 S.E.2d 258, 261 (2003). There is no requirement that the victim of such acts be physically touched.

Here, the plaintiff's evidence was sufficient to warrant an inference by the jury that the "John Doe" driver was angered by the blowing of horns when he failed to proceed through a green light; that he considered the plaintiff the object of his anger; that his stare showed hostility toward her; and that he made repeated attempts, ultimately successful, to injure her or put her in fear of injury by either colliding with her or by running her off the road. The plaintiff testified unequivocally that she was "really, really frightened." The jury could have concluded from the evidence that the defendant's conduct was not merely negligent or reckless, but was instead conduct "intended to cause harmful contact or apprehension of such contact" and conduct that created in the plaintiff's mind "a reasonable apprehension of an imminent battery." Therefore, the trial court erred in sustaining the motion to strike the plaintiff's evidence of assault.

The plaintiff's evidence of willful and wanton conduct stands upon the same footing. If accepted by the jury, that

evidence would have warranted a conclusion that the defendant caused injury to the plaintiff by deliberately swerving into her lane of travel and then suddenly applying his brakes, knowing that she would be forced into an emergency maneuver to avoid colliding with him. The propensity for such an act to cause injury was self-evident but it was done without regard for the consequences.

We held, in Booth v. Robertson, 236 Va. 269, 273, 374 S.E.2d 1, 3 (1988), that punitive damages are warranted not only by malicious conduct, but also by "negligence which is so willful or wanton as to evince a conscious disregard of the rights of others."  In Griffin v. Shively, 227 Va. 317, 321, 315 S.E.2d 210, 213 (1984), we said:

> Willful and wanton negligence is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another.

We added a commentary to these cases in Infant C. v. Boy Scouts of America, 239 Va. 572, 581-82, 391 S.E.2d 322, 327 (1990):

> The hallmark of this species of tortious conduct is the defendant's consciousness of his act, his awareness of the dangers or probable consequences, and his reckless decision to proceed notwithstanding that awareness.  Because such consciousness and awareness are prerequisites, the use of the term "negligence," in defining the tort, is a misnomer,

to the extent that negligence is equated with inadvertent neglect of a duty.

In Doe v. Isaacs, 265 Va. 531, 579 S.E.2d 174 (2003), we considered the sufficiency of the evidence to support a finding of willful and wanton conduct and an award of punitive damages in a case where the defendant, apparently intoxicated, drove into the rear of the plaintiff's car, came to the plaintiff's car and ascertained that injuries had resulted from the collision, and fled the scene. After a review of our prior decisions, we concluded that the defendant's conduct, although grossly negligent, was not willful and wanton because there was no evidence to support a finding that, before the accident, he had the required "actual or constructive consciousness that injury will result from the act." 265 Va. at 538, 579 S.E.2d at 178. In the present case, by contrast, there was evidence that would have supported such a finding.

The appellee argues that the jury's finding against the plaintiff on the issue of negligence renders harmless any error in striking the evidence on the other two counts. Because the torts of negligence, assault, and willful and wanton conduct are conceptually distinct, as discussed above, we do not agree.

Because the court erred in granting the motions to strike the evidence, we will reverse the judgment and remand the case

7

for trial on the issues of assault and willful and wanton conduct.

Reversed and remanded.