Present:  Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and Agee, JJ., and Carrico, S.J.

INGRID H. COWAN

v.  Record No. 032758    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                              November 5, 2004
HOSPICE SUPPORT CARE, INC.


          FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
                      John W. Scott, Jr., Judge

     In this appeal, we consider whether a plaintiff's claims of

gross negligence and willful and wanton negligence against a

charity are barred by the doctrine of charitable immunity.

     For purposes of this appeal, the facts relevant to this

issue of law and question of first impression are not in

dispute.  On July 9, 2001, the plaintiff, Ingrid H. Cowan,

placed her mother, Ruth D. Hazelwood (the decedent), in Harbor

House, a residential facility that provides temporary care for

very ill persons when their primary caregiver seeks respite.

Harbor House is operated by the defendant, Hospice Support Care,

Inc. (Hospice), "a non-profit, non-medical volunteer hospice

support corporation."

     The decedent was bedridden and required the assistance of

two persons to move her from her bed to a bedside commode.

During the decedent's first night at Harbor House, a single

volunteer lifted her from the bed.  When the decedent's right

leg became "caught" in the bed, the volunteer heard a loud

"popping-cracking" noise in the leg. That evening, and for the remainder of the decedent's week-long stay at Harbor House, the decedent received morphine for pain in her leg, but she was not provided any other medical treatment.

Cowan returned to Harbor House on July 16, 2001. After she and her mother left the facility, Cowan discovered that the decedent's leg was swollen and that she appeared to be in pain. As a result, Cowan took the decedent to a nearby hospital emergency room. The decedent was diagnosed as having a shattered right femur, which required amputation of her leg above the knee. The decedent died four days later from complications resulting from the surgery.

Cowan filed an amended motion for judgment in the circuit court against Hospice alleging wrongful death of the decedent based on claims of simple negligence, gross negligence, willful and wanton negligence, and negligent hiring and retention. Upon consent of the parties, the circuit court dismissed the simple negligence count. Hospice filed a plea in bar of charitable immunity to the counts of gross negligence and willful and wanton negligence, and a demurrer to the negligent hiring and retention count. The circuit court sustained the plea in bar and demurrer and dismissed these remaining counts with

prejudice[1]. Among other things, the circuit court concluded that the charitable immunity doctrine barred recovery for acts or omissions of gross negligence and willful and wanton negligence. Cowan appeals.

On appeal, Cowan argues that this Court has not applied the charitable immunity doctrine to shield a charity from liability for acts of gross negligence or willful and wanton negligence. She asserts that because gross negligence and willful and wanton negligence are different in degree and kind from simple negligence, the charitable immunity doctrine should not be defined as including immunity for those more extreme acts. Cowan also contends that the charitable immunity doctrine should not be applied to acts of gross negligence or willful and wanton negligence because, in instances of such extreme conduct, the public's interest in encouraging charitable activities is outweighed by the need to deter such acts of "reckless and harmful behavior."

In response, Hospice argues that charities should be immune from liability for all degrees of negligence because the absence of such immunity would discourage them from performing their beneficial activities. Hospice asserts that this Court, in its prior decisions, has discussed charitable immunity from

_____

[1] Cowan did not assign error to the trial court's decision sustaining the demurrer to the negligent hiring and retention

3

liability for negligence without specifically limiting that immunity to claims of simple negligence. Thus, Hospice contends, because gross negligence and willful and wanton negligence are simply different degrees of negligence, charitable immunity extends to shield charities from liability for those categories of negligent conduct as well.

Hospice also asserts that Code § 8.01-226.4, which effectively subjects hospice volunteers to liability for acts of gross negligence and willful and wanton negligence, is evidence of the General Assembly's intent to shield charities from similar liability by providing a remedy against the individuals who actually commit such acts.[2] We disagree with Hospice's arguments.

Under the doctrine of limited immunity applied to charities in this Commonwealth, a charitable institution is immune from liability to its beneficiaries for negligence caused by acts or omissions of its servants and agents, provided that the charity has exercised due care in their selection and retention. Straley v. Urbanna Chamber of Commerce, 243 Va. 32, 35, 413

---

claim.
    [2] Hospice additionally argues that even if it can be sued for gross negligence or willful and wanton negligence, Cowan has failed to plead sufficient facts to state a claim for either. However, we do not consider this argument because the circuit court did not rule on the sufficiency of the facts pleaded in the amended motion for judgment. Thus, the issue is not before us in this appeal.

4

S.E.2d 47, 49 (1992); Thrasher v. Winand, 239 Va. 338, 340, 389 S.E.2d 699, 701 (1990).  While this immunity shields a charity from claims made by its beneficiaries, the immunity does not extend to protect the charity from claims made by persons who have no beneficial relationship to the charity but are merely invitees or strangers.  Straley, 243 Va. at 36-37, 413 S.E.2d at 49; Thrasher, 239 Va. at 340-41, 389 S.E.2d at 701.

We adopted this doctrine of limited charitable immunity based on public policy considerations.  Moore v. Warren, 250 Va. 421, 424, 463 S.E.2d 459, 460 (1995); Hill v. Leigh Mem'l Hosp., 204 Va. 501, 504-05, 132 S.E.2d 411, 414 (1963); Weston v. Hospital of St. Vincent, 131 Va. 587, 609-10, 107 S.E. 785, 792 (1921).  These considerations rest on the premise that the services charities extend to their beneficiaries also benefit the public by alleviating a public burden.  See Hill, 204 Va. at 507, 132 S.E.2d at 415.  When charities are required to expend funds to litigate negligence claims, the charities' ability to perform services for their beneficiaries is restricted.  See Moore, 250 Va. at 423, 463 S.E.2d at 460; Hill, 204 Va. at 507, 132 S.E.2d at 415; see also Egerton v. R.E. Lee Mem'l Church, 395 F.2d 381, 382 (4th Cir. 1968).

These public policy considerations provide the framework for resolving the issue before us.  In deciding this question, we focus on the nature of the conduct involved in the differing

degrees of negligence and the extent to which each type of conduct deviates from the role of charities and their contribution to the public welfare.

As our decisions have recognized, there are three levels of negligence. The first level, simple negligence, involves the failure to use the degree of care that an ordinarily prudent person would exercise under similar circumstances to avoid injury to another. Gossett v. Jackson, 249 Va. 549, 554, 457 S.E.2d 97, 100 (1995); Griffin v. Shively, 227 Va. 317, 321, 315 S.E.2d 210, 212-13 (1984). The second level, gross negligence, is a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person. This requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness. Koffman v. Garnett, 265 Va. 12, 15, 574 S.E.2d 258, 260 (2003); Griffin, 227 Va. at 321, 315 S.E.2d at 213; Ferguson v. Ferguson, 212 Va. 86, 92, 181 S.E.2d 648, 653 (1971).

The third level of negligent conduct is willful and wanton negligence. This conduct is defined as "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." Etherton v.

_Doe_, 268 Va. 209, 213-14, 597 S.E.2d 87, 90 (2004)(quoting _Griffin_, 227 Va. at 321, 315 S.E.2d at 213); see also _Alfonso v. Robinson_, 257 Va. 540, 545, 514 S.E.2d 615, 618 (1999).

As these definitions illustrate, there are fundamental distinctions separating acts or omissions of simple negligence from those of gross negligence and willful and wanton negligence. When we consider these distinctions in the context of the charitable immunity doctrine, their differing applications to the doctrine become apparent.

Acts or omissions of simple negligence may occur routinely in the performance of the activities of any charitable organization. Employees or volunteers, in carrying out their duties, may fail to understand or to adequately follow instructions of a supervisor, may exercise poor judgment, or may have a lapse in attention to an assigned task. While serious consequences may result from these deficiencies in performance, they ordinarily do not involve an extreme departure from the charity's routine actions in conducting its activities.

In contrast, gross negligence involves conduct that "shocks fair-minded people," and willful and wanton negligence involves such recklessness that the actor is aware that his conduct probably would cause injury to another. _Etherton_, 268 Va. at 213-14, 597 S.E.2d at 90; _Wilby v. Gostel_, 265 Va. 437, 446, 578 S.E.2d 796, 801 (2003); _Griffin_, 227 Va. at 321, 315 S.E.2d at

7

213. Thus, unlike simple negligence, these two levels of negligence are characterized by conduct that represents an unusual and marked departure from the routine performance of a charity's activities.

As a practical matter, a charity's performance of its mission may be thwarted by litigation directed at the charity's failure to perform its activities in accordance with standards of ordinary care. For this reason, our Commonwealth's public policy in favor of promoting the activities of charitable organizations has been employed to shield charities from liability for their acts of simple negligence.

This rationale, however, is inapplicable to conduct involving gross negligence and willful and wanton negligence. Unlike acts or omissions giving rise to claims of simple negligence, such conduct can never be characterized as an attempt, albeit ineffectual, to carry out the mission of the charity to serve its beneficiaries. Therefore, we conclude that the public policy rationale that shields a charity from liability for acts of simple negligence does not extend to acts of gross negligence and willful and wanton negligence.

This conclusion does not represent a departure from our often-stated preference for legislative rather than judicial action to "abolish or relax" the charitable immunity doctrine. See, e.g., Moore, 250 Va. at 424, 463 S.E.2d at 460; Roanoke

<u>Hosp. Ass'n v. Hayes</u>, 204 Va. 703, 709, 133 S.E.2d 559, 563 (1963); <u>Hill</u>, 204 Va. at 504, 133 S.E.2d at 563.  Instead, our present holding, like several of our earlier decisions, serves to define the contours of the doctrine with regard to a subject we have not previously addressed.  <u>See</u>, <u>e.g.</u>, <u>Moore</u>, 250 Va. at 424, 463 S.E.2d at 460-61 (volunteer of charity is immune from liability to charity's beneficiaries while engaged in performance of charity's work); <u>Straley</u>, 243 Va. at 37, 413 S.E.2d at 50-51 (community member only generally served by charity is not beneficiary); <u>Weston</u>, 131 Va. at 610, 105 S.E. at 792 (one who pays for charity's services can be beneficiary of charity).

We also observe that our holding today is consistent with the General Assembly's enactment of Code § 8.01-226.4.  That statute provides civil immunity for the acts or omissions of hospice volunteers who render care to terminally ill patients, provided that the volunteers act in good faith and in the absence of gross negligence or willful misconduct.  In enacting this section, the General Assembly has expressed a clear preference for excluding from the protection of charitable immunity acts or omissions of gross negligence and willful misconduct.

For these reasons, we conclude that the circuit court erred in sustaining the defendant's plea of charitable immunity to

Counts II and III of Cowan's amended motion for judgment.  We will reverse the circuit court's judgment and remand the case for further proceedings consistent with the principles expressed in this opinion.

Reversed and remanded.