# CIRCUIT COURT OF THE CITY OF DANVILLE

Stanley Cabiness,
administrator of the Estate of
Pounce DeLeon Cabiness,
deceased

v.

Medical Facilities of Am. VIII (8), L.P.,
t/a Piney Forest Healthcare Center, et al.

June 21, 2010

Case No. CL10-005

By JUDGE DAVID A. MELESCO

This matter comes before the Court on the defendants' demurrer to the plaintiff's claim for punitive damages. For the reasons stated below, the Court overrules the Demurrer to Plaintiff's First Amended Complaint.

*Facts on Demurrer*

*Standard of Review*

The Court, in ruling on the defendants' demurrer, "consider[s] as true all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the facts alleged." *Luckett v. Jennings*, 246 Va. 303, 307, 435 S.E.2d 400, 402 (1993). Nonetheless, despite the liberality of presentation that is indulged

by the Court, the claims within the plaintiff's complaint "must be made with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment." *Kitchen v. City of Newport News*, 275 Va. 378, 385, 657 S.E.2d 132, 136 (2008) (citation omitted). Thus, a "demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Glazebrook v. Board of Supervisors*, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003).

Rule 1:4(d) of the Rules of the Supreme Court of Virginia requires every pleading to "state the facts on which the party relies ... and it shall be sufficient if it clearly informs the opposite party of the true nature of the claim. . . ." Va. Sup. Ct. R. 1:4(d) (2009). A motion for judgment must allege "sufficient facts to constitute a foundation in law for the judgment sought, and not merely conclusions of law." *Hubbard v. Dresser, Inc.*, 271 Va. 117, 122, 624 S.E.2d 1, 4 (2006) (citing *Moore v. Jefferson Hospital, Inc.*, 208 Va. 438, 440, 158 S.E.2d 124, 126 (1967)). And to survive a challenge by demurrer, a pleading "must set forth the essential facts (not conclusions of law) which constitute the foundation in law, of the judgment to be asked, and ... this must be done with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment." *Moore*, 208 Va. at 440, 158 S.E.2d at 126 (quotations omitted). "In other words, despite the liberality of presentation which the court will indulge, the motion must state a cause of action." *Hubbard*, 271 Va. at 122–23, 624 S.E.2d at 4 (quoting *Moore*, 208 Va. at 440, 158 S.E.2d at 126).

## Facts as Alleged in the Amended Complaint

The instant action was brought by Stanley P. Cabiness as administrator of the estate of Pounce DeLeon Cabiness, now deceased, against Medical Facilities of America VIII (8), L.P., t/a Piney Forest Healthcare Center ("PFHC"), Medical Facilities of Virginia, L.P., I, and Medical Facilities of America, Inc. The amended complaint alleges that Pounce DeLeon Cabiness ("Cabiness") was hospitalized at the Danville Regional Medical Center ("DRMC") from August 13-16, 2009, and had a PEG feeding tube surgically placed on August 14, 2009. Amend. Compl. ¶ 6. After his hospitalization, Cabiness was admitted to PFHC on August 16, 2009. *Id.* An employee of the defendants observed Cabiness with the PEG tube "laying in bed with bulb deflated" on August 20, 2009. Amend. Compl. ¶ 7. The employee re-inserted the PEG tube without taking proper steps to ensure the tube was safely replaced. *Id.* The defendants improperly inserted the tube into Cabiness's peritoneal cavity, rather than his stomach,

and continued providing feeding formula, medication, and flushes through the misplaced tube. *Id.* One and a half hours after the feeding tube was reinserted, the defendants received an order for Cabiness to have an x-ray verification of PEG tube placement, but no x-ray confirmation was documented until eight and a half hours after the PEG tube was reinserted. Amend. Compl. ¶ 8. Over three hours after the PEG tube was reinserted, Cabiness was observed to be "grunting with facial grimace and sweating," and eight hours later he was noted to be cool and clammy with a blood pressure of 72/50. Amend. Compl. ¶ 9. Fifteen hours after the PEG tube has been reinserted, Cabiness was transferred to DRMC. *Id.*

Upon admission to DRMC, Cabiness was noted to have shortness of breath and a tender abdomen and to be hypoxic with a rapidly declining mental status and rapid respirations. Amend. Compl. ¶ 10. In addition, he had an elevated temperature, elevated heart rate, elevated blood sugar level, abnormal creatinine, and an acute kidney injury. *Id.* A CT scan was performed on his abdomen and revealed that the PEG tube was not properly placed in his stomach. Amend. Compl. ¶ 11. Rather, the PEG tube was located in the peritoneal cavity and free air, food, and medication were flowing into the peritoneum. *Id.* Due to Cabiness's rapidly declining condition and the severity of his peritonitis, he was a poor candidate for surgery. *Id.* He was placed on comfort measures and died on August 31, 2009. Amend. Compl. ¶¶ 11-12.

The plaintiff has asserted a negligence claim, alleging that the defendants breached their duty to comply with the standards of practice applicable to like personnel and facilities by, *inter alia*: failing to train and educate staff concerning care the defendants knew was necessary to meet Cabiness's known medical needs, including care related to PEG tubes; assigning staff to Cabiness's care the defendants knew had not been trained and educated to meet Cabiness's known medical needs concerning PEG tubes; improperly reinserting Cabiness's dislodged PEG tube into his peritoneal cavity instead of his stomach; failing to transfer Cabiness to the hospital immediately after his PEG tube was noted to have been dislodged so the tube could be replaced under physician supervision, which the defendants knew was necessary because the PEG tube tract was immature; failing to obtain an x-ray and to notify immediately Cabiness's physician that the PEG tube was dislodged before the defendants resumed tube feeding, medications, and flushes through the misplaced PEG tube, which the defendants knew was substandard care; using as the sole means of attempting to confirm proper PEG tube placement confirmation measures that the defendants knew had been rejected many years earlier as

unreliable; failing to confirm before each administration of feedings, medications, and flushes that the tube was properly placed; and failing to timely obtain an x-ray of Cabiness's abdomen in response to an order from Cabiness's physician, despite knowing that not doing so was substandard care. Amend. Compl. ¶ 14. The Amended Complaint contains numbered paragraphs, with two paragraphs numbered 14. This Letter Opinion will refer to the first paragraph 14 as ¶ 14 and the second as ¶ 14(2). All subsequent paragraphs will be referenced as numbered in the Amended Complaint.

The amended complaint alleges that Cabiness sustained injury and/or death as a direct result of the above negligence. *Id.* The plaintiff further alleges that the defendants engaged in the above conduct "with such recklessness or negligence as to evince a conscious disregard of and indifference to the rights of Cabiness." Amend. Compl. ¶ 19. The defendants allegedly authorized the conduct leading to the injury by "compromise[ing] the plaintiff's care, safety, and well-being by authorizing and directing decisions about his care, staffing, the provision and/or use of medical and diagnostic services, and staff training and education, proper feeding tube placement, and hospital transfers that had the effect of minimizing costs and maximizing revenues and profits." *Id.* And the defendants "knew their conduct was likely to cause injury and/or death to Cabiness and others." *Id.* Finally, the defendants allegedly ratified the conduct of their employees by:

> failing to disavow and repudiate that conduct, by failing to take action (i.e. counseling, restriction of responsibility, probation, suspension, etc.) against staff responsible for that conduct, by failing to take any corrective or remedial action to prevent further similar acts of neglect, by accepting, retaining, and enjoying the financial benefits of their conduct, by attempting to prevent scrutiny of their negligence by failing to report that negligence as required by law to the Virginia Department of Health, ombudsman, and social services, and by engaging in the
> entire course of conduct described in this [amended] complaint with full knowledge of that conduct and the risks it would impose on Cabiness'[s] safety and well-being.

Amend. Compl. ¶ 20.

*Analysis*

*Types of Negligence*

Virginia law recognizes three degrees of negligence: simple, gross, and willful and wanton. *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 486–87, 603 S.E.2d 916, 918–19 (2004). Simple negligence "involves the failure to use the degree of care that an ordinarily prudent person would exercise under similar circumstances to avoid injury to another." *Cowan*, 268 Va. at 486–87, 603 S.E.2d at 918 (citing *Gossett v. Jackson*, 249 Va. 549, 554, 457 S.E.2d 97, 100 (1995); *Griffin v. Shively*, 227 Va. 317, 321, 315 S.E.2d 210, 212-13 (1984)). Gross negligence "is a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person. This requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Id.* (citing *Koffman v. Garnett*, 265 Va. 12, 15, 574 S.E.2d 258, 260 (2003); *Griffin*, 227 Va. at 321, 315 S.E.2d at 213; *Ferguson v. Ferguson*, 212 Va. 86, 92, 181 S.E.2d 648, 653 (1971)). Willful and wanton negligence is defined as "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Cowan*, 268 Va. at 487, 603 S.E.2d at 919 (quoting *Etherton v. Doe*, 268 Va. 209, 213-14, 597 S.E.2d 87, 90 (2004)); *see also Alfonso v. Robinson*, 257 Va. 540, 545, 514 S.E.2d 615, 618 (1999)). The Supreme Court of Virginia has further explained the tort of willful and wanton negligence:

> The hallmark of this species of tortious conduct is the defendant's consciousness of his act, his awareness of the dangers or probable consequences, and his reckless decision to proceed notwithstanding that awareness. Because such consciousness and awareness are prerequisites, the use of the term "negligence," in defining the tort, is a misnomer, to the extent that negligence is equated with inadvertent neglect of a duty.

*Etherton*, 268 Va. at 214, 597 S.E.2d at 90 (quoting *Infant C. v. Boy Scouts of Am.*, 239 Va. 572, 581-82, 391 S.E.2d 322, 327 (1990)).

"As these definitions illustrate, there are fundamental distinctions separating acts or omissions of simple negligence from those of gross negligence and willful and wanton negligence." *Cowan*, 268 Va. at 487, 603 S.E.2d at 919. "Acts or omissions of simple negligence may occur routinely in the performance of the activities of any ... organization. Employees or volunteers, in carrying out their duties, may fail to understand or to adequately follow instructions of a supervisor, may exercise poor judgment, or may have a lapse in attention to an assigned task." *Id.* Gross negligence goes beyond simple negligence and involves conduct that would "shock fair-minded persons." *Id.* " 'Gross negligence' is that degree of negligence which shows such indifference to others as constitutes an utter disregard of caution amounting to a complete neglect of the safety of another person or another person's property. It is such negligence as would shock fair-minded people, although it is something less than willful recklessness." *Verry v. Barry*, 71 Va. Cir. 318, 321 (2006) (citing *Ferguson v. Ferguson*, 212 Va. 86, 92, 181 S.E.2d 648 (1971)). "Gross negligence has been described as the 'utter disregard of prudence amounting to complete neglect of the safety of another'." *Chapman v. City of Va. Beach*, 252 Va. 186, 190, 475 S.E.2d 798, 800–01 (1996) (quoting *Frazier v. City of Norfolk*, 234 Va. 388, 393, 362 S.E.2d 688, 691 (1987)). "It is a heedless and palpable violation of legal duty respecting the rights of others" which amounts to the "absence of slight diligence, or the want of even scant care." *Id.* (quoting *Town of Big Stone Gap v. Johnson*, 184 Va. 375, 378, 35 S.E.2d 71, 73 (1945)). In contrast, willful and wanton negligence exists when the actor is actually aware that his conduct probably would case injury to another. *Id.* "However, ill will is not a necessary element of willful and wanton negligence." *Alfonso*, 257 Va. at 545, 514 S.E.2d at 618. "[E]vidence that a defendant had prior knowledge or notice that his actions or omissions would likely cause injury to others is a significant factor in considering issues of willful and wanton negligence." *Alfonso*, 257 Va. at 546, 514 S.E.2d at 619.

## Punitive Damages

The purposes of punitive damages include punishment of the wrongdoer, protecting the public, and "providing an example and warning to deter others from engaging in the same or similar conduct." *Allstate Ins. Co. v. Wade*, 265 Va. 383, 391–92, 579 S.E.2d 180, 184 (2003). The only type of negligence for which punitive damages may be awarded is willful and wanton negligence. *Wallen v. Allen*, 231 Va. 289, 297, 343 S.E.2d 73,

78 (1986); *Huffman v. Love*, 245 Va. 311, 313–14, 427 S.E.2d 357, 359 (1993); *Woods v. Mendez*, 265 Va. 68, 76, 574 S.E.2d 263, 268 (2003). "An award of punitive damages requires a showing that a defendant's 'conduct was of such recklessness or negligence as evinces a conscious disregard of the rights of others'." *Allstate*, 265 Va. at 396, 579 S.E.2d at 187 (quoting *Puent v. Dickens*, 245 Va. 217, 219, 427 S.E.2d 340, 342 (1993)). "[W]hether a defendant acted willfully or wantonly in conscious disregard for the safety of others[] involves consideration of the entire conduct of the defendant." *Allstate Ins. Co. v. Wade*, 265 Va. 383, 396, 579 S.E.2d 180, 187 (citing *Huffman v. Love*, 245 Va. 311, 314–15, 427 S.E.2d 357, 360 (1993)).

Because punitive damages are only available for claims of willful and wanton negligence, when a plaintiff seeks punitive damages, the complaint must state sufficient facts to support a claim of willful and wanton negligence. To survive a challenge by demurrer, a pleading "must set forth the essential facts (not conclusions of law) which constitute the foundation in law, of the judgment to be asked, and … this must be done with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment." *Moore*, 208 Va. at 440, 158 S.E.2d at 126 (quotations omitted). "Each case raising an issue concerning the sufficiency of a claim of willful and wanton negligence must be evaluated on its own facts." *Mendez*, 265 Va. at 77, 574 S.E.2d at 268. In the instant case, it is a close determination whether the plaintiff has pleaded sufficient facts to support a claim of willful and wanton negligence. The defendants in this case are business entities and can only act through individuals, their employees and agents. "It must be considered as the settled law of this State that punitive damages cannot be awarded against a master or principal for the wrongful act of his servant or agent in which he did not participate, and which he did not authorize or ratify." *Hogg v. Plant*, 145 Va. 175, 181, 133 S.E. 759, 761 (1926); *see also Oberbroeckling v. Lyle*, 234 Va. 373, 382, 362 S.E.2d 682, 687 (1987); *Freeman v. Sproles*, 204 Va. 353, 358, 131 S.E.2d 410, 414 (1963); *Virginia R. & P. Co. v. Deaton*, 147 Va. 576, 582, 137 S.E. 500, 502 (1927). For a principal to be liable *respondeat superior* for punitive damages based on the ratification of actions by its agent, the agent's conduct must itself have constituted willful and wanton negligence. *See Virginia R. & P. Co. v. House*, 148 Va. 879, 886, 139 S.E. 480, 482 (1927); *Qureshi v. Barlow & Borland, L.L.C.*, No. CL-2006-4354, 2007 Va. Cir. LEXIS 44 (Fairfax Co. Mar. 7, 2007). In the instant case, insufficient facts have been pleaded to support a willful and wanton negligence action against the employees. The plaintiff has,

however, pleaded sufficient facts to support a claim of simple or gross negligence against the employees, for which the defendants could potentially be liable *respondeat superior*. And without a claim of willful and wanton negligence, punitive damages are unavailable. Consequently, the defendants cannot be liable *respondeat superior* for punitive damages because the employees are not liable for punitive damages. Moreover, a plaintiff cannot simply plead that a defendant "authorized" or "ratified" the conduct in question. Plaintiffs must plead *facts* which a reasonable jury could conclude amounted to "authorization" or "ratification." In the instant case, the plaintiff has not alleged any such facts. Ratification cannot be implied from "subsequent remedial measures" or from the defendant employers' failure to fire the employees involved. *Southern Ry. v. Grubbs*, 115 Va. 876, 881, 80 S.E. 749, 751 (1914). And "the mere receipt of a benefit is not a ratification of the tortious act from which the benefit was derived, since ratification never takes place without knowledge." *Broudy-Kantor Co. v. Levin*, 135 Va. 283, 288, 116 S.E. 677, 678 (1923) (quotations omitted).

The plaintiff alleged that the defendants had the requisite knowledge and that they engaged in their course of conduct "with such recklessness or negligence as to evince a conscious disregard of and indifference to the rights of Cabiness." Amend. Compl. ¶ 19. But it is not sufficient merely to plead the conclusion that the defendants acted in conscious disregard for the rights of the plaintiff. The plaintiff must plead *facts* to support that conclusion. "A claim for punitive damages at common law in a personal injury action must be supported by *factual allegations* sufficient to establish that the defendant's conduct was willful or wanton." *Mendez*, 265 Va. at 76, 574 S.E.2d at 268 (emphasis added).

However, the amended complaint also contains allegations that the defendants knew that certain training and education was necessary in order for the staff to meet Cabiness's known medical needs, but they failed to provide such training. And despite this lack of training, the defendants assigned staff to care for Cabiness that they knew had not been sufficiently trained and educated to meet his known medical needs concerning PEG tubes, knowing that doing so was "likely to cause injury and/or death to Cabiness and others." Amend. Compl. ¶¶ 14, 19.

The amended complaint appears to plead inconsistent facts. On the one hand, it alleges that the business entity defendants failed to adequately train and educate their staff concerning Cabiness's known medical conditions, including PEG tubes. On the other hand, it alleges that the defendants (as acting through their employees) failed to provide the care

they knew was necessary for Cabiness. Amend. Compl. ¶ 14. If the defendants failed to adequately train their staff, then the staff would not have had the requisite knowledge to act with willful and wanton negligence. If the defendants did adequately train their staff, then the staff might have had the requisite knowledge.

Upon careful consideration of all the facts alleged in the amended complaint, the Court finds that the plaintiff has pleaded sufficient facts from which a reasonable jury could conclude that the defendants were actually aware, from their knowledge of existing circumstances and conditions, that their conduct probably would cause injury to another and that, despite such actual knowledge, they consciously disregarded the probable harm to the plaintiff. *Cowan*, 268 Va. at 487, 603 S.E.2d at 919; *Etherton*, 268 Va. at 214, 597 S.E.2d at 90. As such, the amended complaint supports a claim for willful and wanton negligence, which, if proved at trial, would entitle the plaintiff to seek punitive damages.

In short, to recover punitive damages, the plaintiff must plead *facts* to support a claim of willful and wanton negligence, either (1) committed by the business entity defendants or (2) committed by their employees or agents and either previously authorized or subsequently ratified by the defendants. The plaintiff has sufficiently pleaded facts to support punitive damages based on the first method. But sufficiently *pleading* a claim for willful and wanton negligence does not insulate the plaintiff from a motion to strike the evidence if the plaintiff fails to present sufficient facts at trial to support such a claim.

In addition, the Court cautions that plaintiffs cannot simply plead "knowledge" or "conscious disregard" in every personal injury suit with the hope of uncovering facts to support that claim in discovery. Indeed, the Supreme Court has expressed a "general reluctance to allow punitive damages in run-of-the-mill personal injury cases." *Booth v. Robertson*, 236 Va. 269, 273, 374 S.E.2d 1, 3 (1988). In a negligence action, a plaintiff may not plead that a defendant had the *knowledge* and *actual awareness* to constitute willful and wanton negligence (as opposed to simple or gross negligence) unless he can certify that, "to the best of his knowledge, information, and belief, formed after reasonable inquiry, [such a claim] is well grounded in fact." Va. Code Ann. § 8.01-271.1 (2010). It is not sufficient for a willful and wanton negligence claim that the defendant showed a shocking and utter disregard of caution amounting to a complete neglect of the safety of another. The defendant must have been *actually aware* that his conduct *probably* would cause injury to another. *Cowan*, 268 Va. at 487, 603 S.E.2d at 919. And a plaintiff may not plead that a

defendant had such actual awareness unless the plaintiff has already conducted a reasonable inquiry and uncovered sufficient facts to certify that, "to the best of his knowledge, information, and belief," the defendant did, in fact, have such actual awareness. Va. Code Ann. § 8.01-271.1 (2010).

## *Conclusion*

Therefore, the Court overrules the defendants' Demurrer to Plaintiff's First Amended Complaint.