COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Fulton, Friedman and Chaney

AMBER NICOLE ETHEL SHELTON

MEMORANDUM OPINION[*] BY
v.        Record No. 1044-22-1            JUDGE FRANK K. FRIEDMAN
                                         OCTOBER 24, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
Holly B. Smith, Judge

(Joshua A. Goff; Goff Voltin, PLLC, on brief), for appellant.
Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Justin B. Hill, Assistant
Attorney General, on brief), for appellee.

Following a bench trial, the trial court convicted Amber Shelton of driving under the

influence of alcohol (DUI) after having been convicted of felony DUI, in violation of Code

§§ 18.2-266 and 18.2-270, and driving on a revoked license after having been convicted of felony

DUI, in violation of Code § 46.2-391(D)(2)(a)(ii).  Shelton argues that the evidence was insufficient

to prove she was the person operating the vehicle.  Shelton also asserts that the trial court erred in

admitting a certificate of analysis into evidence.  After examining the briefs and record in this case,

the panel unanimously holds that oral argument is unnecessary because "the dispositive issue or

issues have been authoritatively decided, and the appellant has not argued that the case law should

be overturned, extended, modified, or reversed."  Code § 17.1-403(ii)(b); Rule 5A:27(b).  For the

following reasons, we disagree with Shelton's assertions and affirm the trial court's judgment.

_____

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). In doing so, we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

Patricia Branch was in her sunroom watching television when she heard a "large sound like a huge explosion bang" outside. She looked through her window and saw lights pointing into her sunroom from the road, so she thought it might be "some kind of issue with a car." Branch investigated and soon observed a vehicle, turned "fully upside down," on the right side of the road. Two women—later identified as Shelton and Jasmine Glassco—were "kind of wandering around" outside the vehicle. Both women appeared to be in a "daze." Shelton had a significant wound to her forehead and was bleeding. Shortly thereafter, another vehicle stopped at the scene to assist, and Shelton entered the vehicle and sat in the back seat. Glassco sat in the front passenger seat. Branch, a nurse, encouraged them to wait for the ambulance. No one left the scene, and Branch did not see anyone else in the area.

James City County Police Officer Chad Perrigan was the first to arrive at the scene of the accident. Officer Perrigan asked Shelton if she had been driving the vehicle before it crashed, and she responded that a co-worker named Jessica was driving. Shelton could not provide a last name or a description for Jessica. After learning from a responding medic that Shelton had an odor of alcohol about her person, Officer Perrigan asked her, "What did you drink this evening?" Shelton stated that she consumed "[t]hree or four shots of Crown Royal" about an hour and a half before the

accident. Shelton was transported to Riverside Regional Hospital ("Riverside") in Newport News. Officer Perrigan eventually served a search warrant upon Riverside seeking Shelton's blood work. In response, Officer Perrigan obtained two vials of Shelton's blood and placed them in a locked refrigerator in the property and evidence area at the police department. Officer Perrigan also obtained a search warrant for Shelton's hospital records.

Jasmine Glassco was riding in the car with Shelton just before the accident occurred. She testified that she and Shelton were the only two occupants of the vehicle and that Shelton was driving. Glassco explained that she and Shelton were in the car talking and the next thing she knew the car flipped over. Glassco dragged Shelton from the driver's seat of the car. Glassco denied that anyone named Jessica was in the car when the accident occurred. Glassco admitted that she had consumed a beer or two before the accident, and she claimed that she had a valid driver's license. Glassco also admitted that she had at least five prior convictions involving lying, cheating, or stealing, and she conceded that, because she had not been driving the car, she was not charged for any offenses.

Suleika Farquhar testified as a custodian of the records for Riverside. Farquhar confirmed that Shelton's medical records were kept in the ordinary course of business at the hospital "[b]y somebody with knowledge of what is occurring at the time that [the record is created]." Farquhar further verified the authenticity of pages 17 and 24 from Shelton's medical record, and those two pages were entered into evidence without objection.

Jake Rice was employed in the property and evidence department at the James City County Police Department. Rice transported the vials containing Shelton's blood to the Department of Forensic Science for analysis.

Dr. Jon Dalgleish testified as an expert in the field of forensic toxicology at trial. Dr. Dalgleish analyzed one of the two vials of blood submitted for analysis and found that Shelton's

blood contained "ethanol at a .210, plus or minus .012 percent by weight by volume." Dr. Dalgleish included his findings in a certificate of analysis dated March 18, 2021. At trial, Shelton objected to the admission of the certificate of analysis and argued that the Commonwealth failed to show that the procedures governing implied consent laws were followed pursuant to the relevant code sections and therefore that the certificate of analysis was not admissible. The Commonwealth responded that it was not entering the certificate of analysis to show implied consent, but rather as "information about what the blood alcohol [content] of the person was while that person was in the hospital." Shelton responded that even though the hospital records contained evidence of blood alcohol content, the Commonwealth was still required to lay a proper foundation for the admissibility of the certificate of analysis into evidence. The trial court admitted the certificate of analysis for the limited purpose of questioning Dr. Dalgleish about his findings.

Dr. Dalgleish testified that the amount of ethanol in Shelton's blood would cause "significant detriments in balance and coordination, dizziness, drowsiness, disorientation." He further opined that "[t]he whole process of receiving information, forming a decision on that information, . . . and coordinating complex tasks such as driving in non-tolerant individuals are significant at this level." Dr. Dalgleish confirmed that such a level of intoxication would be consistent with someone appearing "dazed" and who had trouble maintaining control of a vehicle. The Commonwealth asked Dr. Dalgleish to review the pages from Shelton's medical record and asked him to explain what was meant by the notation that Shelton's blood contained "242 milligrams per deciliter." Dr. Dalgleish made some calculations to address the difference in "serum plasma" analyzed by the hospital and the "whole blood" that the Department of Forensic Science tests and concluded that the blood alcohol content reported in the medical record was "a .20 on the whole blood equivalent on the low end." No objection was raised as to the hospital's test data; nor

did Shelton object to Dr. Dalgleish's discussion of the effect this level of alcohol would have on Shelton.

The Commonwealth entered a DMV transcript and a certified prior conviction order into evidence showing that Shelton was previously convicted of felony DUI and that her license was revoked for that DUI at the time of the accident.

After the Commonwealth rested its case, Shelton made a motion to strike and argued that the evidence failed to prove she was operating the vehicle at the time of the accident. After the trial court denied the motion to strike, Shelton did not present any evidence and presented closing argument, again asserting that the evidence failed to prove she was driving the car. The trial court disagreed and convicted Shelton of DUI and driving on a revoked license, DUI related. This appeal followed.

ANALYSIS

I. Operation of Vehicle

Shelton asserts that the evidence failed to establish she was operating the vehicle at the time of the crash, because no witness, besides Glassco, observed her driving the car, sitting in the driver's seat, or exiting the vehicle. Shelton suggests that the evidence failed to exclude the reasonable hypothesis of innocence that Glassco was the driver. Under our standard of review, we disagree.

Shelton was convicted of violating Code §§ 18.2-266 and 18.2-270. Code § 18.2-266 provides that "[i]t shall be unlawful for any person to drive or operate any motor vehicle . . . while such person is under the influence of alcohol[.]" Code § 18.2-270 provides that

> [a] person who has been convicted of . . . a felony violation of
> § 18.2-266 shall upon conviction of a subsequent violation of
> § 18.2-266 be guilty of a Class 6 felony. The punishment of any
> person convicted of such a subsequent violation of § 18.2-266 shall
> include a mandatory minimum term of imprisonment of one year and
> a mandatory minimum fine of $1,000.

Code § 18.2-270(C)(2). Finally, Shelton was convicted of violating Code § 46.2-391(D)(2)(a)(ii), which provides in pertinent part:

> D. Any person convicted of driving a motor vehicle . . . (i) while his license is revoked pursuant to subsection A or B or (ii) in violation of the terms of a restricted license issued pursuant to subsection C shall, provided such revocation was based on at least one conviction for an offense committed after July 1, 1999, be punished as follows:
>
> . . . .
>
> 2. a. If such driving . . . (ii) takes place while such person is in violation of § . . . 18.2-266, . . . irrespective of whether the driving of itself endangers the life, limb or property of another and the person has been previously convicted of a violation of § . . . 18.2-266, . . . such person shall be guilty of a felony punishable by confinement in a state correctional facility for not less than one year nor more than five years, one year of which shall be a mandatory minimum term of confinement or, in the discretion of the jury or the court trying the case without a jury, by mandatory minimum confinement in jail for a period of 12 months and no portion of such sentence shall be suspended or run concurrently with any other sentence.

Shelton's contention on appeal is that the evidence failed to prove she was driving the car when it crashed.

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

"[I]t 'is axiomatic that any fact that can be proved by direct evidence may be proved by circumstantial evidence.'" *Haskins v. Commonwealth*, 44 Va. App. 1, 6 (2004) (quoting *Etherton v. Doe*, 268 Va. 209, 212-13 (2004)). "Settled principles provide that '[w]here the evidence is entirely circumstantial, . . . [t]he chain of necessary circumstances must be unbroken. The circumstances of motive, time, place, means, and conduct must all concur to form an unbroken chain [that] links the defendant to the crime beyond a reasonable doubt.'" *Rams v. Commonwealth*, 70 Va. App. 12, 36 (2019) (alterations in original) (quoting *Bishop v. Commonwealth*, 227 Va. 164, 169 (1984)). "[W]hile no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Williams v. Commonwealth*, 71 Va. App. 462, 484-85 (2020) (alterations in original) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017)). "[A]ll necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence." *Betancourt v. Commonwealth*, 26 Va. App. 363, 373 (1998) (alteration in original) (quoting *Stover v. Commonwealth*, 222 Va. 618, 623 (1981)).

In this case, Patricia Branch was sitting in her house when she heard "a huge explosion bang" somewhere outside. Branch immediately responded to what she thought might be a car accident and arrived at the scene of the crash within five minutes. As she approached, Branch observed two dazed women outside the overturned vehicle. Branch did not see anyone else in the area, and no one left the scene of the accident before police and medical personnel arrived. Shelton was bleeding and had a significant laceration to her forehead. She also smelled of alcohol and admitted she had been drinking about an hour and a half before the accident. Shelton claimed that a co-worker by the name of Jessica was driving, but she could not provide a description or last name. Glassco denied knowing anyone named Jessica or that such a person was with them that evening. She testified that Shelton was driving the car. Shelton's blood alcohol was later analyzed at the lab

and determined to be .21% by weight by volume. The record sufficiently proved that Shelton was driving the vehicle while under the influence of alcohol and while her license was revoked for a prior DUI.

We must reject Shelton's assertion that the evidence failed to exclude the reasonable hypothesis of innocence that Glassco was driving the car that night. The reasonableness of a defendant's alternative hypothesis of innocence is determined by the fact finder. *See Moseley*, 293 Va. at 464 ("[T]he factfinder determines which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant."). "The reasonable-hypothesis principle 'merely echoes the "standard applicable to every criminal case[]"' [and] . . . is 'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'" *Id.* (first quoting *Vasquez v. Commonwealth*, 291 Va. 232, 250 (2016); and then quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). Moreover, "[t]he sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017).

"When the law says that it is for triers of the facts to judge the credibility of a witness, the issue is not a matter of degree." *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989)). "In a bench trial, the trial judge's 'major role is the determination of fact, and with experience in fulfilling that role comes expertise.'" *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Haskins*, 44 Va. App. at 11). Thus, "[t]his Court must 'accept the trial court's determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible."'" *Commonwealth v. Perkins*, 295 Va. 323, 328 (2018) (quoting *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to

believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald*, 295 Va. at 487 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

Glassco's testimony was not inherently incredible or so manifestly false that the trial court should not have believed it. At the scene of the accident Shelton told police that a co-worker named Jessica, whose last name she did not know and whom she could not describe, was driving the car. However, no one named Jessica was in the area and Branch did not see anyone else in the vicinity of the vehicle or leaving the scene of the accident when she arrived shortly after the crash. Notably, although Shelton denied driving the vehicle, she named "Jessica," not Glassco, when asked who was driving. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

On these facts, we cannot conclude that the trial court erred in finding that Shelton was operating her vehicle at the time of the accident.

## II. Certificate of Analysis

Shelton also asserts that the trial court erred in admitting the certificate of analysis into evidence at trial "where the Commonwealth failed to adhere to the procedures set forth in Va. Code § 18.2-268.5 and Va. Code § 18.2-268.6." Assuming without deciding that the trial court erred in admitting the certificate of analysis into evidence at trial, we find that the error was harmless.

"In analyzing the decision of a lower court, this Court has explained that it looks for 'the best and narrowest grounds available' for its decision, including harmless error." *Commonwealth v. Kilpatrick*, 301 Va. 214, 216 (2022) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)). "[E]videntiary errors are subject to non-constitutional harmless error review." *Jones v.*

*Commonwealth*, 71 Va. App. 70, 91 (2019). "Non-constitutional error is harmless '[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" *Id.* (alteration in original) (quoting *Salahuddin v. Commonwealth*, 67 Va. App. 190, 212 (2017)); *see also* Code § 8.01-678. That is, "nonconstitutional error is harmless if the reviewing court can be sure that the error did not influence the [fact finder] and only had a slight effect." *Lawrence v. Commonwealth*, 279 Va. 490, 497 (2010).

In the case at bar, we find that the alleged error in admitting the certificate of analysis did not unfairly influence the fact finder or have any substantial effect on the outcome of the case. The evidence proved that Officer Perrigan obtained two search warrants—one for Shelton's blood work and one for her medical records. Pursuant to those warrants, Perrigan received two vials of blood and sent them to the lab for analysis. In the meantime, hospital personnel independently conducted a blood serum test, and the resulting written report was admitted into evidence at trial without objection.[1] Dr. Dalgleish, testifying as an expert in forensic toxicology, read the results of the hospital's serum plasma test included in the medical records. Dr. Dalgleish calculated the difference between the "serum plasma" test conducted by the hospital and the "whole blood" test conducted by the lab and concluded from the medical records that Shelton's blood alcohol content was "a .20 on the whole blood equivalent on the low end." Dr. Dalgleish opined that the level of alcohol in Shelton's blood would cause significant impairment to her balance and coordination, as

---

[1] Notwithstanding any other provision of law, the written reports or records of blood alcohol tests conducted upon persons receiving medical treatment in a hospital or emergency room are admissible in evidence as a business records exception to the hearsay rule in prosecutions for any violation of § 18.2-66 (driving while intoxicated) or a substantially similar local ordinance . . . .

Code § 19.2-187.02(A).

- 10 -

well as dizziness, drowsiness, and disorientation. He further opined that she would have trouble forming decisions and coordinating complex tasks such as driving and that her level of intoxication would be consistent with someone who seemed dazed. Shelton did not object to Dr. Dalgleish's testimony about the hospital test or about the effects of the level of alcohol in Shelton's system. Moreover, Officer Perrigan testified that Shelton had an odor of alcohol about her person and admitted to consuming several shots of Crown Royal an hour and a half before the accident.

These facts, even without the certificate of analysis, established that Shelton was operating her vehicle under the influence of alcohol at the time of the accident. Thus, any error in the admission of the certificate of analysis was harmless.

CONCLUSION

Because the evidence in this case was sufficient to prove that Shelton was operating the vehicle at the time of the accident, and because any error in the trial court's decision to admit the certificate of analysis was harmless, we affirm Shelton's convictions.

*Affirmed.*